234 F.2d 465
 Florence W. BRILL, Herman Canter, Edward Netter, Frances
Netter and Robert Netter, Plaintiffs-Appellants,
v.
GENERAL INDUSTRIAL ENTERPRISES, Inc. (formerly The Midvale
Company), Baldwin Securities Corporation,
Midvale-Heppenstall Company, The Heppenstall Company, Howard
H. Casee, Walter H. Lewis, Lloyd R. Loewen, Lewis W.
Metzger, Richard T. Nalle, Adolph O. Schaefer, Edward
Hopkinson, Jr. and C. E. Acker, Defendants-Appellees.
 No. 11843.
 United States Court of Appeals Third Circuit.
 Argued May 7, 1956.
Decided June 20, 1956.
 
 J. Robert Ellner, New York City, for appellants.
 Thomas B. K. Ringe, Philadelphia, Pa., Ralph H. Demmler, Pittsburgh, Pa., for appellees.
 Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.
 KALODNER, Circuit Judge.
 
 
 1
 Plaintiffs appealed from an Order of the District Court for the Eastern District of Pennsylvania dismissing their stockholders' derivative action to enjoin the sale of the corporation's assets which was premised on their contention that such sale would violate the federal antitrust laws and thus subject the corporation to civil and criminal liability.
 
 
 2
 Defendants moved to dismiss the appeal on the ground of 'mootness' in that the sale sought to be enjoined by plaintiffs was completely consummated subsequent to the dismissal above stated and prior to the filing of the appeal.
 
 
 3
 Plaintiffs, in turn, moved to reserve the decision on the Motion to Dismiss until the hearing of the appeal, or, in the alternative, to remand the cause to the District Court to permit the filing of supplemental pleadings.
 
 
 4
 For the purposes of this discussion the facts may be summarized as follows:On December 2, 1955, the Midvale Company ('Midvale') entered into an agreement with the Midvale-Heppenstall Company ('Heppenstall') for the sale to the latter of its physical assets which consisted principally of a steel and ordnance plant at Nicetown, Philadelphia, Pennsylvania. Heppenstall agreed to pay Midvale $6,100,000 cash and to assume certain obligations of Midvale including a contract which the latter had with the United States. Midvale was to retain its net liquid assets and the right to certain income tax credits which together totalled approximately $8,000,000.
 
 
 5
 On December 7, 1955, notice was given to the stockholders of Midvale that a special meeting would be held on December 21, 1955, to approve or disapprove of the proposed sale, and if such approval were given, to act upon a proposal to change Midvale's name to General Industrial Enterprises, Inc. The purpose of this change was to continue the existence of the corporation, utilizing its assets for investment and reinvestment.
 
 
 6
 On December 19, 1955, the plaintiffs, some of them stockholders of Midvale, others stockholders of Baldwin Securities Corporation (which owned 62% of Midvale's capital stock) instituted their stockholders' action.[1]
 
 
 7
 The Complaint contained three counts. The first two counts alleged in substance that the sale price was inadequate and that the sale would not be in the interest of Midvale stockholders. The third count was premised on the allegation that the sale would violate the anti-trust laws.[2] The Complaint prayed for an injunction which would prevent the defendants from holding the Midvale stockholders' meeting on December 21, 1955, from voting shares in favor of the proposed sale and from otherwise consummating it, and finally, a decree declaring the proposed sale to be illegal. Following the filing of Answers a hearing on the plaintiffs' motion for a temporary restraining order was begun in the District Court on December 20th, the day before the stock holders' meeting.[3]
 
 
 8
 The necessity of having the controversy promptly disposed of was apparent from the beginning of the hearing, not only because the purchase agreement in terms provided for consummation by December 31, 1955, but also because it was expected that a tax benefit of approximately $1,800,000 would be lost if the sale were not effected by that date. In view of this, at the end of the first day of hearing on December 20, 1955, it was agreed, with the approval of the court, that the Midvale stockholders' meeting might be held as scheduled on December 21, 1955, but the hearing before the court should resume on December 22, 1955 as a final hearing, and that upon its conclusion the court would make a ruling which, if favorable to defendants, would be rendered in time to permit consummation of the sale by December 31, 1955.
 
 
 9
 At their meeting on December 21, 1955, Midvale's stockholders approved the purchase agreement and the transactions contemplated thereby, 431,896 votes having been cast in favor of the sale and 58,373 votes against it. The change in Midvale's name to 'General Industrial Enterprises, Inc.' was approved also, 432,887 votes to 58,019.
 
 
 10
 Following the stockholders' meeting the hearing was resumed as a final hearing on December 22, 1955. During the course thereof the plaintiffs in the Brill suit were permitted to amend their third cause of action or count by deleting paragraph 39 of the Complaint, which had stated:
 
 
 11
 'This cause of action is brought under the Federal Anti-Trust Laws, commonly referred to as the Sherman Anti-Trust Act and the Clayton Act.'
 
 
 12
 and substituting instead the following:
 
 
 13
 'This action is brought by the plaintiffs, citizens of states other than the states of which the defendants are citizens to enjoin threatened violations of the Federal Anti-Trust Statutes (15 U.S.C. Sections 1 and 18).'
 
 
 14
 Also during the hearing the defendants filed a motion, and the court heard argument thereon, for dismissal of the third cause of action in the Brill suit (i.e. the court under the Sherman and Clayton Acts), on the ground that it failed to state a claim against defendants upon which relief could be granted, in that plaintiffs had no standing as shareholders of Midvale and/or Baldwin to seek an injunction against alleged violation of the anti-trust laws, and even if plaintiffs had such standing, no facts were alleged on the basis of which any violation of the anti-trust laws could be found as against Midvale and/or Baldwin.
 
 
 15
 The evidence at the hearing related principally to the fairness of the proposed sale, with particular reference to the adequacy of the purchase price. In view of defendants' motion to dismiss the anti-trust count of the Brill complaint and the fact that a hearing on such count was not then feasible anyway, little or no evidence with respect to the alleged violation of the anti-trust laws was introduced. The hearing was concluded on December 23, 1955, with the understanding that if the court did not grant defendants' motion to dismiss the antitrust count of the Brill complaint, a subsequent hearing might be had on that count.
 
 
 16
 On December 29, 1955 the court entered its orders (1) denying plaintiffs' prayer for a final injunction in the Gomberg suit, (2) denying plaintiffs' prayer for a final injunction under the first and second counts in the Brill suit, and (3) granting defendants' motion to dismiss the third count in the Brill suit for a preliminary injunction under the antitrust laws.
 
 
 17
 On December 30, 1955 the court filed its consolidated Opinion in both the Gomberg and Brill suits, holding that the proposed sale was fair and reasonable to Midvale, that no cause of action had been stated in the Brill suit for alleged violation of the anti-trust laws, that plaintiffs' prayer for an injunction in the Gomberg suit and under the first and second causes of action in the Brill suit should be denied, and that defendants' motion to dismiss the complaint with respect to the third or anti-trust count in the Brill suit should be allowed.
 
 
 18
 The defendants, pursuant to the District Court's action, consummated the sale on December 30, 1955. Subsequent to such consummation the plaintiffs, the same day, filed notice of appeal with respect only to the District Court's dismissal of the anti-trust count of their complaint for an injunction. The appeal was docketed here on February 7, 1956. No supersedeas bond was ever filed.[4]
 
 
 19
 Defendants' Motion to Dismiss the appeal was filed on April 20, 1956. Its premise is that the cause has become moot in that the sale of assets sought by the plaintiffs to be enjoined has been completely consummated in accordance with the December 29th Order of the District Court and its Opinion of December 30th; to hold otherwise would be to give this appeal, for which no security analogous to an injunction bond has been posted, the practical effect of an injunction.
 
 
 20
 We agree.
 
 
 21
 No order was sought by the plaintiffs to maintain the existing status pending their appeal following the filing of the District Court's Order of December 29, 1955 granting the defendants' motion to dismiss the third cause of action premised on the anti-trust laws. Nor was such an order sought by the plaintiffs following filing of the District Court's Opinion on December 30th, pursuant to its Order of the previous day. The plaintiffs knew that the time element was critical in these proceedings; that a tax benefit of approximately $1,800,000 would be lost if the sale was not effected by December 31st and that accordingly the defendants would hasten, in the event of a favorable decision by the District Court, to consummate the transaction forthwith since December 30th was virtually the last business day of the year (December 31st was a Saturday); they had in fact agreed that the District Court should resume on December 22d as a 'final hearing' because of the critical time element in the situation.
 
 
 22
 It is well-settled that the mere filing of an appeal, in the absence of a stay of proceedings, cannot operate as an injunction where none has been granted by the court below; otherwise stated, an appeal from a decree dismissing a complaint seeking an injunction, or refusing to grant an injunction, will not disturb the operative effect of such a decree, and where the act sought to be restrained has been performed, the appellate courts will deny review on the ground of mootness. Mills v. Green, 1895, 159 U.S. 651, 16 S.Ct. 132, 40 L.Ed. 293; Jones v. Montague, 1904, 194 U.S. 147, 24 S.Ct. 611, 48 L.Ed. 913; Selden v. Montague, 1904, 194 U.S. 153, 24 S.Ct. 613, 48 L.Ed. 915; Richardson v. McChesney, 1910, 218 U.S. 487, 31 S.Ct. 43, 54 L.Ed. 1121; Wingert v. First National Bank of Hagerstown, 1912, 223 U.S. 670, 32 S.Ct. 391, 56 L.Ed. 605; Shaw v. Lane, 1917, 47 App.D.C. 170, 173, appeal dismissed sub nom. Shaw v. Payne, 1920, 254 U.S. 609, 41 S.Ct. 60, 65 L.Ed. 436; Chesapeake Western Ry. v. Jardine, 1925, 56 App.D.C. 33, 8 F.2d 194, certiorari denied sub nom. Town of Bridgewater v. Jardine, 1926, 270 U.S. 653, 46 S.Ct. 352, 70 L.Ed. 782; California Canning Peach Growers v. Myers, 9 Cir., 1935, 78 F.2d 194, 195.
 
 
 23
 What was said in Shaw v. Lane, supra, is particularly appropriate. There an appeal was dismissed where it sought to review the District Court's dismissal of a bill for an injunction to restrain the Secretary of the Interior from approving and delivering certain mineral leases of property belonging to an Indian tribe, it appearing that pending the appeal the leases had in fact been approved and delivered.
 
 
 24
 Said the Court, 47 App.D.C. at pages 173-174:
 
 
 25
 'This is a clear case, where appellants applied to the court for a restraining order, which was denied, and no stay of proceedings was had pending appeal. The rule is without exception that, where appeal is taken from a decree dismissing a bill for injunction, and pending appeal the act sought to be restrained is done, the appeal will not operate as a stay of proceedings. 'The general rule is well settled that an appeal from a decree granting, refusing, or dissolving an injunction, does not disturb its operative effect. Hovey v. McDonald, 109 U.S. 150, 161, 3 S.Ct. 136, 27 L.Ed. 888; In re Slaughter-house Cases, 10 Wall. 273, 297, 19 L.Ed. 915; Leonard v. Ozark Land Co., 115 U.S. 465, 468, 6 S.Ct. 127, 29 L.Ed. 445. When an injunction has been dissolved, it cannot be revived except by a new exercise of judicial power, and no appeal by the dissatisfied party can of itself revive it. A fortiori, the mere prosecution of an appeal cannot operate as an injunction where none has been granted.' Knox County v. Harshman, 132 U.S. 14, 10 S.Ct. 8, 33 L.Ed. 249.'
 
 
 26
 There remains for disposition the plaintiffs' motion to reserve decision on defendants' motion to dismiss, or in the alternative, to remand the cause to the District Court to permit the filing of supplemental pleadings, pursuant to Rule 15(d), Federal Rules of Civil Procedure, 28 U.S.C., and to amend their prayer for relief to include the setting aside of the consummated sale.
 
 
 27
 As to the request to reserve decision on the motion to dismiss until hearing of the appeal:
 
 
 28
 We agree with the defendants' contention that such reservation 'could only result in a wasteful expenditure of time in argument on the merits of an appeal which is moot' and that 'the very purpose of the motion to dismiss is to avoid such a needless waste of time and effort.'
 
 
 29
 As to plaintiffs' motion to remand to permit filing of supplemental pleadings under Rule 15(d) and to amend their prayer for relief:
 
 
 30
 Plaintiffs have misconstrued Rule 15(d). It provides for supplemental pleadings while the matter is still pending in the District Court so as to permit the parties to bring the controversy up to date, but here the District Court terminated the litigation, as far as it was concerned, by dismissing the plaintiffs' action.
 
 
 31
 By their motion plaintiffs are really seeking 'new' relief in the form of an order (by the District Court) setting aside the consummated sale.
 
 
 32
 For the reasons stated the plaintiffs' motion will be denied and the defendants' motion to dismiss will be granted.
 
 
 
 [1]
 On December 16, 1955, Samuel Gomberg and certain other shareholders of Midvale instituted a stockholders' diversity-of-citizenship suit ('the Gomberg suit') in the court below, at Civil Action No. 20,012, against Midvale, Baldwin Securities Corporation and various directors of Midvale and Baldwin. The substance of that Complaint for Injunction was that the sale price under the Purchase Agreement was inadequate and that the sale would not be in the best interests of Midvale's stockholders. Plaintiffs asked for a temporary restraining order and injunction which would prevent the defendants from submitting the proposed sale or any similar sale to the stockholders' meeting, from voting any shares in favor of the sale, and from taking any other action toward consummation thereof
 
 
 [2]
 The essence of the third count of the Brill Complaint was that the Westinghouse Electric Corporation, Allis-Chalmers Manufacturing Company and General Electric Company, competitors as among themselves, but not made defendants to the suit and not parties to any agreement with Midvale or Baldwin, had agreed with Heppenstall to subscribe to sufficient nonvoting preferred stock of Midvale-Heppenstall to finance in part its purchase of Midvale's assets, and thus to prevent possible liquidation of Midvale's business, and that the proposed sale would reduce competition and restrain trade in violation of the Sherman, 15 U.S.C. §§ 1-7, 15 note and Clayton, 15 U.S.C. § 12 et seq., Acts, with consequent exposure of Baldwin and Midvale to possible criminal and civil liability
 
 
 [3]
 The hearing was really in the Gomberg suit. By agreement of the parties the hearing was extended to cover the Brill suit
 
 
 [4]
 No appeal was ever filed in the Gomberg suit. Nor was appeal ever filed with respect to the District Court's denial of plaintiffs' prayer for a final injunction under the first and second counts in their complaint