**Charles D. HAZZARD et al.**

**v.**

**WESTVIEW GOLF CLUB, INC., et al.**

Supreme Judicial Court of Maine.

Feb. 18, 1966.

William M. Finn, Joseph B. Campbell, Augusta, for plaintiffs.

Arthur A. Hebert, Frederick P. O'Connell, Frank E. Southard, Jr., Augusta, for defendants.

Before WEBBER, TAPLEY, MARDEN, RUDMAN, and DUFRESNE, JJ.

DUFRESNE, Justice.

In the course of the liquidation of the defendant corporation, Westview Golf Club, Inc., the receiver petitioned the Superior Court for authority to sell the corporate real estate, part of which consisted of a nine hole golf course, a miniature golf course, a driving range, a putting green and a club house; his request included the right simultaneously to dispose of the dining room and kitchen equipment and miscellaneous other golf merchandise and equipment. By decree of March 11, 1965, the receiver's petition to sell the real and personal property of the corporate defendant "at either public or private sale at auction or otherwise" was approved. The receiver sought bids from some 9 or 10 "golf interests" in the state, and the mortgagees also made efforts at finding purchasers. In response thereto, Louis F. Bourque and G. Leo Bourque, to be hereinafter referred to as the Bourques, submitted a bid of $76,000.00 along with earnest money as required by the bid invitation. On April 16, 1965, the receiver sought confirmation of the sale of the property to the Bourques at that price.

On April 17, 1965, opposition arose to the confirmation of the sale to the Bourques from a lien creditor who objected on the grounds that no public notice for bids had been given and no notice of the proposed sale to the Bourques had been sent to the creditors. The hearing was continued to April 19, 1965, at which time the Wheeler group, so-called, through counsel, manifested an interest in purchasing the property at a price to exceed $76,000.00, but wished further time to obtain information and to arrange for financing. The hearing was further postponed to April 24, 1965, and public notice given for others interested in purchasing at a price in excess of $76,000.00, to be prepared to make a firm offer of purchase and deposit 20% of the purchase price offer.

On April 24, 1965 the hearing was finally continued to the following day, April 25, 1965, and the situation at that time was as follows: The Bourques were standing on their previous bid of $76,000.00; the Wheeler group asked for recognition; the court expressly reserved to the Bourques their legal position in relation to their bid, but explored the prospects of a higher bid. When a dispute arose as to the manner of procedure in such exploration, the court decided to proceed by auction, at which time the Wheeler group submitted a bid of $80,000.00 and turned over the required earnest money to the receiver. The court reserved its decision until the next day, April 26, 1965, when by written memorandum, it decided:

"Hence, the remaining problem is a balancing of the equities between the Bourques and the Wheeler Group, taking also into consideration the position of the second mortgagee. It is inconceivable that the Wheeler Group were unaware of the insolvency of 'Westfield' (sic) Golf Club, Inc., during the last three months. This Group had adequate opportunity to contact the Receiver at any time in the effort to negotiate the purchase of the property. It apparently showed no such active interest.

The Receiver asked all of the persons he had contacted and who showed an active interest to submit written bids along with earnest money by a certain date. The only bid received was that of the Bourques for $76,000.00. One must conclude that when it became known that the property was sold, subject to Court confirmation, for that amount, the Wheeler Group decided that they could afford to offer a larger sum. Under these circumstances this Court does not feel that equity and justice require it to refuse to confirm the sale to the Bourques at least at some price.

Therefore, the Order of this Court is that a sale to the Bourques will be confirmed at a price of $80,000.00, plus agreement to pay 1965 City taxes. If the Bourques are unwilling to pay the $80,000.00, then the Wheeler Group may have the property at said $80,000.00 provided, however:

A. The Bourques may be heard once more should they refuse to pay the $80,000.00 on the question of the Court's right to refuse to confirm for $76,000.

B. The second mortgagee may be heard, if he choses, at the same time and on the same issue as is presented in paragraph A above.

If the Bourques decide to pay $80,000, plus the 1965 City taxes, the matter is concluded in their favor. If they do not so decide, and wish to be further heard on their right to purchase for $76,000, the Court will set the matter for hearing Friday, April 30th, at a time of day to be later agreed upon."

On April 28, 1965, the Wheeler group moved the court to reopen the hearing on petition for approval of the sale, on the ground that they were ready and willing to improve upon their $80,000.00 bid. The Bourques did consent to advance their bid to $80,000.00 and by decree of April 29, 1965, the justice of the Superior

Court ordered that "said sale of said property of Westview Golf Club, Inc. to said Louis F. Bourque and G. Leo Bourque be confirmed; and that said Receiver be authorized and directed to execute and deliver to said Louis F. Bourque and G. Leo Bourque all deeds, bills of sale, and other instruments necessary and proper to convey to them the property of said Westview Golf Club, Inc."

The receiver's bond was approved on May 5, 1965, and his interim report with copies of deed and bill of sale evidencing the sale was filed.

The Wheeler group on May 17, 1965, appealed from the order of confirmation of the sale to the Bourques, and in order to protect its status as a party appellant, it formally sought leave to intervene as plaintiffs and the court granted intervention on May 27, 1965, at which time the Wheeler group as plaintiff-intervenors, formally renewed their appeal from the confirmatory order of sale. The Bourques similarly applied for and received formal status as defendant-intervenors, and cross-appealed from the court's grant of intervention to the Wheeler group.

Initially, let us say that all parties concede that no fraud is involved in this case and that all participants acted in good faith.

M.R.C.P. Rule 62(a) as amended, reads as follows:

"Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 30 days after its entry or until the time for appeal from the judgment as extended by Rule 73(a) has expired. *Unless otherwise ordered by the court, an interlocutory or permanent injunction or a judgment in a receivership action* or, in an action for divorce, an order relating to the care, custody and support of minor children or to the separate support or personal liberty of the wife *shall not be stayed during the period after its entry and until an appeal is taken or dur-*

*ing the pendency of an appeal.* (Emphasis supplied) The provisions of subdivision (d) of this rule govern the suspending, modifying, restoring or granting of an injunction during the pendency of an appeal."

Was the decree involved in the Wheeler appeal, to wit, the order confirming the sale to the Bourques, a judgment in a receivership action within the meaning of Rule 62(a)?

We take notice that F.R.Civ.P., Rule 62 (a), in its pertinent part, is worded somewhat differently from the Maine rule.

"Unless otherwise ordered by the court, *an interlocutory* or *final judgment* in an action for an injunction or *in a receivership action* * * * shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal." (Emphasis added).

The federal rule specifically applies to interlocutory or final judgments both in an action for an injunction or in a receivership action, while the Maine rule applies to injunctions, interlocutory (restraining order and preliminary injunction) or permanent, and to judgments in a receivership action. Whether an interlocutory judgment in a receivership action, is within the term "judgment" in M.R.C.P. Rule 62(a), we need not determine at this time.

M.R.C.P. Rule 54(a): "'Judgment' as used in these rules includes a decree and any order from which an appeal lies. * * "

■ Generally, an appeal lies only from and after a final judgment, decree or order. Fidelity & Casualty Co. v. Bodwell Granite Co., 102 Me. 148, 152, 66 A. 314, 316:

"All interlocutory motions and other interlocutory matters should be disposed of at nisi prius, saving to the parties their rights of exception or appeal, if any. They should not be sent to the law court, even upon report. at the request of the parties, except at

such stage of the case, or upon such stipulation, that a decision of the question may, in one alternative at least, dispose of the case itself. The Legislature in constituting the law court and defining its jurisdiction (Rev.St. c. 79, § 46) did not intend it to be used as a substitute for presiding justices nor to relieve judges in the trial courts from the duty of deciding, as they arise, mere interlocutory questions incident to the progress of the trial or the case."

Andreau and Dostie v. Wellman, 142 Me. 271, 50 A.2d 193.

Exceptions to the general rule are provided under M.R.C.P. Rule 54(b), Rule 72 (c), and possibly may exist in cases of injunctions. See Field and McKusick, Comments under Rule 73. See also, Burt Company v. Burrowes Corporation, 158 Me. 237, 240, 182 A.2d 481, 483.

A final appealable judgment, decree or order, may exist in a number of different situations.

■ Where the judgment fully decides and disposes of the whole cause leaving no further questions for the future consideration and judgment of the Court, the finality thereof is obvious. Gilpatrick v. Glidden, 82 Me. 201, 203, 19 A. 166.

■ One test that may be used to determine finality of judgment is to consider whether the case is in such a condition that if there be an affirmance, the court below would have nothing to do but execute the decree already entered. Sawyer v. White, 125 Me. 206, 209, 132 A. 421. Foss v. Maine Potato Grower's Exchange, Appeal of Freeman C. Hatch, Claimant, 126 Me. 603, 139 A. 85.

■ Another test of a final judgment lies, not in the nature of the ruling, but in its effect in concluding the rights of the party appealing; if his rights are concluded so that further proceedings after the ruling cannot affect them, there is a final

judgment. Howarth v. Northcott, 152 Conn. 460, 208 A.2d 540.

The reference decree confirming the sale to the Bourques, in so far as it affects the rights of the Wheeler group to purchase the subject real estate, meets both tests above indicated. An affirmance thereof on appeal would leave the decree ready-made for execution. The decree affects the rights of the Wheeler group to such an extent that, short of an appeal with stay of the sale pending, its rights, if any, would vanish with ouster of the group from the court proceedings. See also 4 Am.Jur.2d, Appeal and Error, §§ 51–64. 4 C.J.S. Appeal & Error §§ 94, 100.

■ The decree of the court below confirming the sale of the corporate defendant's real estate, golf courses and club premises with all incidental equipment, to the Bourques in the course of administration of receivership proceedings, was a final and appealable decree. For relief against the sale, resort can alone be had to an appeal from the decree of confirmation. See Tobey v. Poulin, 141 Me. 58, 38 A.2d 826; Sage v. Central R. Co., 96 U.S. 712, 24 L.Ed. 641; Forrester et al. v. Howard et al., 124 Ky. 215, 98 S.W. 984; In Re Bank of San Pedro, 1 Cal.2d 675, 37 P.2d 80; Hendrix v. Francis, 203 Ala. 342, 83 So. 66; Parker et al. v. Bodcaw Bank, 161 Ark. 426, 256 S.W. 384; Clarke et al. v. Federal Land Bank of St. Louis, 197 Ark. 1094, 126 S.W.2d 601; Shortle et al. v. McCloskey et al., 38 N.M. 548, 37 P.2d 800; McCredie et al. v. Dubuque Fire & Marine Ins. Co., 49 Okl. 496 153 P. 846; Casey v. Smith et al., 36 S.D. 36, 153 N.W. 918; Brady et al. v. Ford et al., 184 Wash. 467, 52 P.2d 319.

■ The confirmation of the sale, carried out by execution and delivery of ownership documents to the Bourques, vested the title in them, determined all questions as to the sale, was a final adjudication and judgment as to its regularity, reasonableness and legality, and left nothing further to be considered or done in regard to it.

It was a final order, from which an appeal could be taken. State Nat. Bank et al. v. Neel, 53 Ark. 110, 13 S.W. 700.

■ The court's order of confirmation, being a final judgment, qualified as "a judgment in a receivership action" under M.R.C.P. Rule 62(a), as to which the rule provides that it shall not be stayed either during the period after its entry and until an appeal is taken or during the pendency of an appeal, *unless otherwise ordered by the court*.

The Wheeler group did not attempt to stay the order of the court confirming the sale to the Bourques and authorizing and directing the receiver to execute and deliver the necessary documents to make the sale. It did not avail itself of the only remedial action it had to maintain the status quo and prevent the property from leaving the possession of the court.

■ "It is elementary that a receivers sale is a judicial sale and the receiver acts only as an officer of the court, sells as and for the court, and sales conducted by him must be confirmed by the court in order to be valid." Tobey v. Poulin, 141 Me. 58, at page 62, 38 A.2d 826, at page 828; 1 Clark on Receivers (2d Ed.) § 482 et seq.; 45 Am.Jur. § 385 et seq.

■ "A receiver appointed by a court of equity is an officer thereof and property in his possession which constitutes a part of the estate that is the subject of the receivership is in custodia legis until it is disposed of by the receiver in compliance with an order of that court." Manchester v. Manchester, R.I., 181 A.2d 235 at page 238; Erikson v. Hewlett, 212 Ga. 423, 93 S.E.2d 563.

■ Where the sale was not stayed, it was the duty of the receiver to comply with the order of sale as directed by the court, notwithstanding the appeal therefrom by the Wheeler group. By reason of the exception in M.R.C.P., Rule 62(a) in favor of judgments in receivership ac-

tions, the appeal did not supersede the order of sale, and its consummation was in no way wrongful either on the part of the seller-receiver, nor on the part of the purchasers, the Bourques.

■ An appellate court will not decide moot questions or abstract propositions. Cumberland Farms Northern, Inc. v. Maine Milk Commission, 160 Me. 389, 205 A.2d 158; 5 Am.Jur.2d Appeal and Error § 913, p. 345; 5B C.J.S. Appeal and Error § 1852, p. 291.

■ The issue in this case does not involve any principle of great public interest as might justify a departure from the general rule.

In Wagner et al. v. Boggess Coal & Supply Co., Ohio App., 94 N.E.2d 64, the trial court ordered a dissolution of a corporation, but the appellant-intervenor failed to procure a stay bond pending appeal and the receiver, during the appeal, liquidated the corporation as ordered by the court by sale of practically all the assets of the corporation. The court there said: "the appellant failed to give a stay bond under Section 12223-9, G.C., holding in abeyance the enforcement of the judgment of the trial court. The question has become moot due to the failure of the appellant to avail himself of his rights under the law to stay the proceedings. * * * the appellant should not be heard to complain, since he did nothing to stay the proceedings pending the appeal."

In Fink v. Continental Foundry & Machine Company, C.C.A. 7th, 1957, 240 F.2d 369, cert. den. 354 U.S. 938, 77 S.Ct. 1401, 1 L.Ed.2d 1538, an action by minority stockholders to restrain the corporation and its officers from selling the assets of the corporation and liquidating the same, resulted in final judgment denying the permanent injunction with dismissal of the action. No application for a stay order pending appeal was made in the lower court. Prior to the prayer for a stay order made to the appellate court pending the outcome of the appeal, the corporate assets were sold and liquidation was carried forward. At time of final hearing on appeal, liquidation had been completed. The court quoting from Sobel v. Whittier Corp., 6 Cir., 195 F.2d 361 at 363, said: "Since appellant only asked to restrain the merger, and the order of the district court dismissing the bill of complaint dissolved any such restraint which had theretofore existed by way of a temporary restraining order, and since appellant did not take any steps to preserve the existing status pending appeal, no relief could be here given, since the plan sought to be restrained has already been carried out, and, as heretofore said, the appeal is moot." The court further said that "if plaintiffs desired that the status quo be maintained pending appeal means were afforded in proper case by Rule 62, F.R.C.P. * * * Plaintiffs failed to seek such protection. * * * There appears to be nothing this court can do now to restore the status quo should the appeal be upheld. * * * the appeal here has become moot and must be dismissed." See also, Kelaghan v. Industrial Trust Co., et al., 1 Cir., 211 F.2d 134.

■ The mere filing of an appeal, in the absence of a stay of proceedings, cannot operate as an injunction or stay where none has been granted by the court below. *An appeal* from a decree dismissing a complaint seeking an injunction, or refusing to grant an injunction, or dissolving an injunction, *will not disturb the operative effect of such a decree,* and where the act sought to be restrained has been performed, the appellate courts will deny review on the ground of mootness.

Brill et als v. General Industrial Enterprises, C.C.A. 3rd C., 1956, 234 F.2d 465 at page 469, and cases cited. See also, Welton v. Iowa State Highway Commission et al, 208 Iowa 1401, 227 N.W. 332; State v. One Buick Automobile et al., 48 N.D. 348, 185 N.W. 305; Flood et al. v. Jacob Dold Packing Co., 75 Colo. 384, 225 P. 851.

Appeals were dismissed for mootness, where no stay was obtained pending appeal in proceedings involving mandamus and prohibition writs. J. R. Francis Construction Co., Inc. v. Pima County et al., 1 Ariz.App. 429, 403 P.2d 934; State ex rel. Hagerty v. Rafn et als., 130 Mont. 554, 304 P.2d 918.

■ Where a judicial sale is untainted by fraud, unfairness, collusion or mistake, public policy requires that its ratification be final, and, unless the decree of confirmation be stayed by proper and timely action, its consummation pending appeal in full compliance with the terms of the decree, will be unassailable. Basiliko et ux. v. Welsh, et al., 219 Md. 602, 150 A.2d 220; Bowles et al. v. M. P. Moller, Inc. et al., 163 Md. 670, 164 A. 655; Preske v. Carroll, 178 Md. 543, 16 A.2d 291, 295; Webster et al. v. Archer, 176 Md. 245, 4 A.2d 434, 439.

And the appeal therefrom becomes moot and subject to dismissal. State v. Mutual Inv. Co., Inc., 214 La. 356, 37 So.2d 817; Machlin v. Essex Park Realty Co., 101 N.J.Eq. 776, 139 A. 32; Wagner et al. v. Boggess Coal & Supply Co., Ohio App., 94 N.E.2d 64; State v. Jackson, et al., 101 S.W.2d 346 (Tex.Civ.App.); Taylor v. Noland et al., 220 Ga. 620, 140 S.E.2d 856; Webb v. Housing Authority of the City of Atlanta, 219 Ga. 51, 131 S.E.2d 547; Selen Housing Corporation et al. v. Goldberg et al., Trustees, 225 Md. 309, 170 A.2d 207.

In the instant case, it appears from the record as it did to the justice below, that the sale of this golf course and club premises had to be made without delay so that the purchaser thereof could take advantage of the upcoming golf season after necessary repairs were made. Indeed, the purchase thereof might not be so appealing to interested purchasers, if advantage of a full season could not be had, and in such a circumstance, the price might be so depressed from that which a seasonable sale might bring that the interests of the creditors may be definitely and seriously prej-

udiced. These contingencies would be taken into consideration upon motion for a stay, and the court could then consider what protective measures, like the giving of bond or the imposing of other conditions, would be required and decreed to save the creditors harmless because of the delay; it might then decide in judicial discretion that under the existing circumstances, any stay would be unduly prejudicial to the creditors.

■ Public policy requires that the ratification of a lawful judicial sale shall be final and conclusive, except in cases of fraud or illegality, and that no judicial sale, when lawfully made, be set aside except upon substantial grounds, for otherwise the public would be loath to bid at such sales. Bachrach v. Washington United Cooperative, Inc., 181 Md. 315, 29 A.2d 822, 825.

The Bourques, as purchasers from the court at the judicial sale, acted in good faith, have fully complied with the terms of the sale, and it does not appear that they could be placed in statu quo, nor is it apparent that full protection to the rights of the creditors could be given at this late date, if the sale were upset.

These difficulties would not exist if the Wheeler group had sought and been granted a stay of the decree confirming the sale as provided by M.R.C.P. Rule 62(a).

The Bourques, by purchasing from the Court pending appeal, did what they had a right to do. We find no fault therein. Fink et al. v. Continental Foundry & Machine Company, supra.

The Wheeler group did not seek a stay of the order confirming the sale to the Bourques, which it had a right to do. Its present difficulty is of its own making. Equity will help those who try to help themselves.

■ Equity generally requires restoration of the status quo as a condition precedent to equitable relief under the doctrine that he who seeks equity must do equity.

Tarbox v. Tarbox, 111 Me. 374, at 383, 384, 89 A. 194; Sjulin v. Clifton Furniture Co., 241 Iowa 761, 41 N.W.2d 721; Neblett v. Macfarland, 92 U.S. 101, 103, 23 L.Ed. 471, 472; See also 19 Am.Jur., Equity, §§ 463, 464; 30 C.J.S. Equity §§ 90, 91, 92.

■ The Wheeler group, when seeking the aid of a court of equity in setting aside its decree confirming the sale to the Bourques and appealing therefrom upon denial of relief, should have applied to the court to maintain the status quo by stay under M.R.C.P. 62(a), as then it would have allowed for reciprocal protection of the equitable rights of the other parties, to wit, the purchaser at the sale and the creditors in the receivership.

■ As stated by Pomeroy, Equity Jurisprudence, Fourth Edition, Vol. 1, page 714, par. 385: "The meaning (of the equitable maxim, "He who seeks equity must do equity") is, that whatever be the nature of the controversy between two definite parties, and whatever be the nature of the remedy demanded, *the court will not confer its equitable relief upon the party seeking its interposition and aid, unless he* has acknowledged and conceded, or *will* admit and *provide for, all the equitable rights, claims, and demands justly belonging to the adversary party,* and growing out of or necessarily involved in the subject-matter of the controversy. It says, in effect, that *the court will give the plaintiff the relief to which he is entitled, only upon condition that he has given,* or consents to give, *the defendants such corresponding rights as he also may be entitled to in respect of the subject matter of the suit."* (Emphasis added). In other words, the doctrine demands the enforcement of the equities of the adversary party, and that he who would have the aid of equity must as a condition allow equity to be done to the opposite party.

■ Failing to seek maintenance of an equitable standing by stay of the judicial sale, the Wheeler group cannot complain of dismissal because of mootness.

The case is moot, and without in any way considering the merits of the controversy between the parties, we dismiss the appeal on that ground.

■ The cross-appeal questions the grant of intervention to the Wheeler group. Our dismissal of the Wheeler appeal finally adjudicates the controversy between the parties in favor of the Bourques; it matters not that our decision was reached on procedural grounds rather than on the merits. Any right of appeal which the Bourques may have had, has at this stage, become mere technicality or formality, void of any present legal practicality. Its determination at best could only serve as advice for the future. Appellate courts will not decide moot questions or abstract propositions, and will not declare, for the government of future litigation, principles or rules of law which cannot affect the result as to any issue pending before them. The Bourques have ceased to be aggrieved. See Ledebuhr v. Krueger et al., 115 Wis. 214, 91 N.W. 1012; Pulsifer v. J. H. McDaniel & Son, 169 Ala. 644, 53 So. 772; Jones v. Moore et al., 54 Ga.App. 803, 189 S.E. 425; 5 C.J.S. Appeal & Error § 1362 b; 5 Am. Jur.2d § 760, et seq.

■ Therefore, without any intimation of our views on the merits thereof, the cross-appeal will also be dismissed for mootness.

The entry will be

Appeal dismissed without costs.

Cross appeal dismissed without costs.

WILLIAMSON, C. J., did not participate.