STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-15-186

MASS. AUDIOLOGY, LLC,
d/b/a MAINE-LY HEARING,

Plaintiff

v.

CHESTER WHITTIER,

Defendant

ORDER ON PLAINTIFF'S REQUEST
FOR PRELIMINARY INJUNCTION

11 JUN '15 AM 11:22

Before the court is plaintiff's motion for a temporary restraining order and a preliminary injunction. The court treats the motion as one for a preliminary injunction. See Clark v. Goodridge, 632 A.2d 125, 127 (Me. 1993) ("A hearing on a TRO may be treated as a hearing on a preliminary injunction . . . when there is sufficient notice and when the parties are in a position to present evidence and legal arguments for or against a preliminary injunction.").

Plaintiff seeks to enjoin defendant from the following:

1. breaching his employment agreement;

2. competing with plaintiff within a ten mile radius of Scarborough, Maine or another business location of plaintiff;

3. interfering with, soliciting, contacting, or calling upon, or attempting to interfere with, solicit, contact, or call upon plaintiff's customers and accounts; and misappropriating or using, or threatening to misappropriate or use, any of plaintiff's confidential and proprietary information and trade secrets.

Plaintiff seeks to compel defendant to do the following:

1. preserve, protect against the disclosure of, and maintain the confidentiality of plaintiff's confidential proprietary information and trade secrets;

2. turn over to plaintiff immediately any and all such confidential and proprietary information and trade secrets in his possession, custody, or control; and

3. provide a full accounting of all contacts defendant has had with plaintiff's customers after the termination of his employment with plaintiff for his own benefit or the benefit of another party other than plaintiff.

Non-testimonial hearing was held on June 1, 2015. Although additional facts were presented by counsel during argument, the court bases this decision on the fairly sparse record provided, which includes the affidavit of plaintiff's Vice President, Michael Fellman and attachments; the affidavit of plaintiff's receptionist and administrator, Angela York; and the affidavit of defendant. Plaintiff filed no reply affidavit with its reply memorandum.

Standard

The court must first decide whether to apply Maine or Massachusetts law[1] regarding the standard for granting a preliminary injunction. "A court usually applies its own local law rules prescribing how litigation shall be conducted even when it applies the local law rules of another state to resolve other issues in the case." Restatement (Second) of Conflict of Laws § 122 (1971). Because the grant or denial of a preliminary injunction impacts the substantive rights of the parties involved, the court will apply the Massachusetts standard for granting a preliminary injunction. See Ocean Spray Cranberries v. Pepsico, Inc., 160 F.3d 58, 60-61 (1st Cir. 1998); see also Arthur D. Wolf, Preliminary Injunction Standards in Massachusetts State and Federal Courts, 35 W. New Eng. L. Rev. 1, 53 (2013) (arguing that preliminary injunctions affect

---

[1] It is not disputed that Massachusetts law applies to this case, although the entire employment agreement was not provided in the record. (Fellman Aff. Ex. A.; Def.'s Mem. 8-9; Pl.'s Reply Mem. 2.)

2

substantive rights and that federal courts should apply state standards to motions for preliminary injunction in cases where state law governs).

Under Massachusetts law,

A party seeking a preliminary injunction must show that (1) success is likely on the merits; (2) irreparable harm will result from denial of the injunction; and (3) the risk of irreparable harm to the moving party outweighs any similar risk of harm to the opposing party.[2]

Cote-Whitacre v. Dep't of Pub. Health, 844 N.E.2d 623, 634 (Mass. 2006).

1. Success on the Merits

The record provides that plaintiff and defendant entered an employment agreement in August 2011 when plaintiff acquired Maine-ly Hearing from Janice Biddle. (Fellman Aff. ¶ 7; Whittier Aff. ¶ 9.) The agreement provides that defendant will not "call, mail, solicit in any way, to former or current customers of Mass. Audiology (Maine-ly Hearing) for a period of two (2) years immediately following termination of employment for any reason." (Fellman Aff. Ex. A ¶ 9.) The agreement further provides defendant "will not become engaged in, nor directly or indirectly compete with Mass. Audiology/Maine-ly Hearing in the operation of a similar business within a 10 mile radius of Scarborough, ME." (Id.) Finally, the agreement provides that defendant will not "disclose to others or use for its own benefit or account any trade secrets or confidential information, including but not limited to, customer lists pertaining to any of the business of Mass. Audiology or any of its clients, customers, consultants, licensees or affiliates acquired by it during the period of employment." (Id. ¶ 10.)

---

2 The "public interest" factor is not considered under Massachusetts law in a case involving only private parties. Compare John T. Callahan & Sons v. City of Malden, 713 N.E.2d 955, 960 (Mass. 1999) with Ingraham v. University of Maine, 441 A.2d 691, 693 (Me. 1982).

3

Defendant is now employed by MAC Hearing Aids, LLC in Portland, Maine, which is within a ten mile radius of plaintiff's business location in Scarborough, Maine. Defendant's new employer is plaintiff's direct competitor. (Fellman Aff. ¶ 12; Whittier Aff. ¶¶ 37-38.) Mr. Fellman offers no other non-speculative evidence of a violation of the employment agreement. (See, e.g., Fellman Aff. ¶ 14.) Ms. York states that one client "specifically informed me that Whittier invited her to see him at his new office."[3] (York Aff. ¶ 7.) Some of the patients defendant worked with at plaintiff's business are patients of his new employer. (Whittier Aff. ¶ 46.) The manner in which plaintiff maintained its business information does not suggest plaintiff sought to protect confidentiality. (Whittier Aff. ¶¶ 27-30.) Fred Rowan, who became defendant's supervisor in November 2014, was uninterested in defendant returning plaintiff's items defendant found in his vehicle. (Whittier Aff. ¶ 55.) There is no evidence that defendant disclosed or used any trade secrets or confidential information. (Whittier Aff. ¶¶ 44-45.)

The agreement is reasonable in distance but not necessarily in time, based on the typical cycle for plaintiff's customers presented by Mr. Fellman. See Lunt v. Campbell, 2007 Mass. Super. LEXIS 484, at *9-10 (Sept. 24, 2007); (Fellman Aff. ¶ 15.) Further, although continued employment can serve as consideration for an employment agreement, the circumstances of the execution of the agreement "weigh in the Court's evaluation of equitable factors in deciding whether to enforce" the agreement. Lunt, 2007 Mass. Super. LEXIS 484, at *11; see also EMC Corp. v. Donatelli, 2009 Mass. Super. LEXIS 120, at *17-18 (May 5, 2009); Kroeger v. Stop & Shop Cos., 432 N.E.2d 566, 568 (Mass. App. Ct. 1982); (Whittier Aff. ¶¶ 9-12.)

---

3 At trial, this statement would likely be inadmissible.

Even accepting the agreement as reasonable and valid, plaintiff has shown a likelihood of success in proving defendant violated section 9 of the employment agreement only by inviting one of plaintiff's customers to visit him and by working at MAC Hearing Aids, LLC. Plaintiff has not shown a likelihood of success in proving defendant violated section 10 of the employment agreement.

2. Irreparable Harm

To carry its burden on the second element, plaintiff must show "that failure to issue the injunction would subject the moving party to a substantial risk of irreparable harm." Packaging Indus. Group, Inc. v. Cheney, 405 N.E.2d 106, 112 (Mass. 1980). If money damages can adequately compensate the moving party, the harm is not irreparable. See id. at 114 ("[T]he record reveals no reason why money damages would not adequately redress any harm the plaintiffs might suffer prior to a final judgment should they prevail on the merits.").

The plaintiff has failed to show, on this record, irreparable harm. Although defendant is working for plaintiff's competitor within ten miles of plaintiff's business location, the evidence of the solicitation of one customer does not constitute irreparable harm. By plaintiff's own analysis, this monetary damage can be calculated. (Fellman Aff. ¶ 15).[4] Similarly, the loss of good will with regard to one customer is insufficient to justify the extraordinary relief requested. See Athenahealth v. Cady, 2013 Mass. Super. LEXIS 87, at *9-10 (May 2, 2013); see also Securadyne Sys., LLC v. Green, 2014 U.S. Dist. LEXIS 45262, at *14, *19 (D. Me. 2014).

---

4 Paragraph 11 of the employment agreement addresses this issue but the entire paragraph has not been provided in the record. (Fellman Aff. Ex. A. ¶ 11.)

### 3. Balance of Harms

The final step of the analysis is to balance plaintiff's risk of irreparable harm "against any similar risk of irreparable harm which granting the injunction would create for [defendant]." Packaging Indus. Group, Inc., 405 N.E.2d at 112. "What matters as to each party is not the raw amount of irreparable harm the party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits." Id.

The record provides that in October 2014, Mr. Fellman requested that defendant work at its South Portland office two days per week. Defendant did not respond to the request. (Whittier Aff. ¶¶ 31-32.) Defendant's subsequent supervisor, Mr. Rowan, revisited the proposal and stated that plaintiff planned to close the Scarborough office within ninety days. (Id. ¶¶ 33-34.) Defendant declined the proposal and in January 2015, defendant gave his two-week notice to end his employment with plaintiff. (Id. ¶ 35-36.) Defendant told Mr. Rowan that defendant intended to work for an ear, nose, and throat doctor in Portland. (Id. ¶ 37.) Prior to defendant's leaving plaintiff's employment, Mr. Rowan became aware of defendant's new employer. (Id. ¶ 38.)

Approximately halfway though defendant's notice period, Mr. Rowan asked defendant to extend his notice period and defendant agreed to work an additional two weeks. (Id. ¶ 39.) During that discussion, Mr. Rowan proposed that defendant split his employment between plaintiff and defendant's new employer. (Id. ¶ 38, 40.) Defendant never discussed this offer again with Mr. Rowan. (Id.)

A few days after February 23, 2015, defendant met with Mr. Rowan at his request. Mr. Rowan asked what would be required for defendant to return to work for plaintiff. (Id. ¶ 52.) At that time, defendant attempted to return items he found in his vehicle, such as service accessories and forms but Mr. Rowan was uninterested in the

6

items. (Id. ¶ 53.) Mr. Rowan referred to the employment agreement only after defendant declined the offer to return to work for plaintiff. (Id.) Plaintiff's office in Scarborough is now open two days per week. (Id. ¶ 58.)

Based on this undisputed record, plaintiff's request for an order that defendant terminate his current employment appears to be in reaction to his refusal to return to work for plaintiff. Further, plaintiff's offer to permit defendant to work for both plaintiff and his new employer at the same time diminishes plaintiff's allegation of irreparable harm resulting from defendant's working for his new employer. The harm to defendant if injunctive relief is granted outweighs the harm to plaintiff if the relief is not granted. "He who seeks equity must do equity." Hazzard v. Westview Golf Club, Inc., 217 A.2d 217, 226 (Me. 1966).

The entry is

Plaintiff's Motion for Preliminary Injunction is DENIED.

Date: June 11, 2015

Nancy Mills
Justice, Superior Court

ERIC UHL ESQ
PETER HERZOG ESQ
LITTLER MENDELSON PC
ONE MONUMENT SQUARE,
SUITE 600
PORTLAND ME 04101

MATTHEW LAMOURIE ESQ
KEVIN HASKINS ESQ
PRETI FLAHERTY BELIVEAU & PACHIOS
PO BOX 9546
PORTLAND ME 04112-9546