STATE OF MAINE

KENNEBEC, ss.

DOCKET NOS. AP-98-45 &
JRA - KEN - 8/4/2000

CONSERVATION LAW
FOUNDATION, INC.,

Petitioner

v.

STATE OF MAINE,
DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

Respondent

*******************************************

CHARLES and CONSTANCE GAGNEBIN,

Petitioners

v.

STATE OF MAINE,
DEPARTMENT OF
ENVIRONMENTAL PROTECTION,

Respondent

REC'D & FILED
Nancy A. Desjardin

AUG 04 2000

Clerk of Courts
Kennebec County

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

AUG 15 2000

I.    Introduction.

In this matter, the Conservation Law Foundation (CLF) and Charles and

Constance Gagnebin (Gagnebins) challenge the issuance of a permit to construct a

dock issued by the Department of Environmental Protection (DEP or "the

department") via the permit by rule (PBR) process. The permit was issued to Prock

Marine Company (Prock) on behalf of Sailing Bartlett Narrows Nominee Trust

(Trust) for construction on the shorefront property of Edward C. Johnson, IV (Johnson), a beneficiary of the Trust and an intervenor in this action. CLF and the Gagnebins also challenge the legality of the particular rule, Me. Dep't of Envir. Prot. chap. 305, § 14 (hereinafter chap. 305, § 14 or PBR 14), by which DEP issued this permit.[1]

By way of history, on April 30, 1997, the Trust applied for an individual permit to construct a dock on the Johnson property at Bartlett Narrows on Blue Hill Bay. This application was modified on February 23, 1998, by the substitution of a second individual application which sought approval of a smaller dock than was originally proposed. This dock was to be supported by a granite structure situated above the low water mark.

While this individual application was pending, Prock, on behalf of the Trust, filed a PBR notification on April 29, 1998, for the construction of a dock essentially the same as that proposed in the second individual application, except that the dock to be built under the PBR permit would be supported by wooden pilings instead of granite. Apparently the dock with wooden pilings would also be located at the same site as the proposed granite-supported dock.

---

[1] Although CLF and DEP provide different accounts of the history of the numeric designation of this section of the permit by rule standards, and the record does not assist in resolving this minor debate, the parties appear to agree that the section under which Prock gave notice as to the pier it wished to build was then called "PBR 13," that PBR 13 was originally "PBR 14," and that there were no substantive changes in this section after it was renumbered. Thus, the court understands that PBR 13 and PBR 14 are identical, that "PBR 14" was the section covering the permit by rule when first adopted in 1992, and that at the time that Prock obtained a permit, PBR 14 had at some previous point been renumbered as PBR 13. The court will refer to the section being challenged as "PBR 14," unless the context of the discussion requires otherwise. *See* Brief of Petitioner CLF at 3; Brief of Respondent DEP at 6, n.8.

2

Consistent with the accelerated PBR process, the PBR notification for the piling-supported dock was accepted or approved on May 4, 1998. The Gagnebins and CLF timely appealed the issuance of this permit, the former to the Board of Environmental Protection (BEP or "the board"), the latter to this court.

On August 11, 1998, DEP approved the individual application for a permit to construct the granite-supported dock. Again, CLF, the Gagnebins, and another abutter appealed the issuance of this permit.[2] The propriety of the issuance of this permit, however, is not before the court. Moreover, it appears from the record that the intervenor has relied on the PBR 14 permit to construct his dock, rather than the individual permit.

The Gagnebins timely appealed the issuance of this PBR 14 permit to the BEP which appeal was denied on October 28, 1998. They have turned to this court for further review of that action via M.R. Civ. P. 80C.[3] CLF appealed directly to this court from the issuance of the contested permit, a procedural step which this court

---

[2] CLF represents that the Board of Environmental Protection held a hearing on the application for an individual permit on December 16, 1999 [sic] but, before a decision was made, Johnson filed a petition to surrender this permit which was accepted by the DEP on January 18, 1999. Brief of Respondent CLF at 9. Those alleged events do not appear in the administrative record and no effort has been made to supplement this record. CLF nevertheless asks the court to take judicial notice of this development because, it asserts, "these facts are easily verifiable." *Id.* at 9, n.6. The court will decline this offer as it does not wish to investigate the facts of this case outside the record provided by making inquiry through a party, namely DEP, as to the status of an application. Moreover, the other parties should have been given notice of this request before the court could properly act on it. M.R. Evid. 201(e); Field & Murray, Maine Evidence, § 201.4 at 54 (2000) (hereinafter Field & Murray at __). Last, the material cited is not appropriate for judicial notice. If the parties had wished these "facts" to be presented to the court, either a stipulation to this effect or a motion to supplement the record would have satisfied this objective. M.R. Evid. 201.

[3] The administrative record provided to the court contains a transcript of the hearing on the Gagnebins' appeal to BEP. It was denied orally; no written decision by BEP was included in this record.

has previously determined was authorized by statute. 38 M.R.S.A. § 344(2-A). *See* Order of June 25, 1999. The parties' separate appeals have been consolidated, and their merits briefed and argued so that the court may now address them.

Both petitioners ask the court to invalidate the "permit" granted to the Trust via PBR 14, invalidate PBR 14 itself, and remand the matter back to DEP for further rulemaking consistent with their view of the law-applicable to proper rulemaking as to the environmental licensing of piers and docks. As noted in this court's prior order, the petitioners' request for relief may, consistent with the pertinent provisions of the Administrative Procedures Act (APA), be considered as a complaint for declaratory judgment as well as an appeal of agency action. Order of June 25, 1999, at 8, n.2.

As the petitioners rely on identical arguments, and the respondents have offered substantially similar rationales in opposition, the discussion which follows will address these issues without reference to a particular party unless the context or the particular point so requires.

II. Discussion.

A. The Permit by Rule Process.

The permit by rule process was established by the Legislature in 1983 to expedite the process for the issuance of various types of permits which may affect the environment. The relevant statute reads in pertinent part:

> 7. **Permit by rule.** The Board of Environmental Protection may permit, by rule, any class of activities that would otherwise require the individual issuance of a permit or approval by the board, if the board determines that activities within the class will have no

4

significant impact upon the environment. Any such rule must describe with specificity the class of activities covered by the rule and may establish standards of design, construction or use as may be considered necessary to avoid adverse environmental impacts. Any such rule must require notification to the commissioner prior to the undertaking of the regulated activity. . . .

38 M.R.S.A. § 344(7) (Supp. 1999).

By virtue of this statute, BEP was authorized by the Legislature to establish rules governing classes of activities affecting the environment which formerly required individual applications and board action, so that one wishing to engage in such an activity could notify the commissioner and, if the activity fell within the applicable standards adopted by BEP, the activity would be permitted "by rule." The purpose of this new environmental permitting system was to exempt certain activities from the usual rigors of DEP scrutiny and thereby speed up their approval. As the statute suggests, and practice has shown in this case, no application for a permit is required; instead, one who wishes to proceed with an activity covered by a rule simply notifies the commissioner "prior to the undertaking of the regulated activity." *Id.* As such, no individual review of the activity is undertaken, and, once the notice is received by DEP, if the activity desired falls within the applicable PBR section, the person providing the notice may proceed with the activity unless DEP contacts that person within 14 days "about questions, clarifications, or project eligibility." Chap. 305, § (1)(F). Thus, if a person files the notification with DEP and hears nothing for 14 days, the activity may proceed without further interaction with the department. *Id.*

The legislative authority conferred on BEP and the commissioner of DEP to effectuate this speedy permitting process requires that the former first determine that the activity to be permitted falls within a class of activities that "will have no significant impact upon the environment." 38 M.R.S.A. § 344(7) (Supp. 1999). The rule adopted by BEP must specifically describe the activities to be covered, "and may establish standards of design, construction or use as may be considered necessary to avoid adverse environmental impacts." *Id.*

The origin of the rulemaking power of BEP at issue here is not in the permit by rule program authorized by the Legislature, but rather it is in the earlier Natural Resources Protection Act (NRPA or "the Act"). 38 M.R.S.A. § 480-A-480-S (1989 & Supp. 1999). In that Act, the Legislature articulated the fundamental policy of the State with regard to environmental protection and assigned the responsibility of developing programs to carry out this policy to DEP. The Law Court tells us that the Act is to be given a broad, liberal interpretation so as to afford its full protection. *Murphy v. Board of Environmental Protection*, 615 A.2d 255, 259 (Me. 1992). The current version of the statute as to this policy reads as follows:

> The Legislature finds and declares that the State's rivers and streams, great ponds, fragile mountain areas, freshwater wetlands, significant wildlife habitat, coastal wetlands and coastal sand dunes systems are resources of state significance. These resources have great scenic beauty and unique characteristics, unsurpassed recreational, cultural, historical and environmental value of present and future benefit to the citizens of the State and that uses are causing the rapid degradation and, in some cases, the destruction of these critical resources, producing significant adverse economic and environmental impacts and threatening the health, safety and general welfare of the citizens of the State.

6

The Legislature further finds and declares that there is a need to facilitate research, develop management programs and establish sound environmental standards that will prevent the degradation of and encourage the enhancement of these resources. It is the intention of the Legislature that existing programs related to Maine's rivers and streams, great ponds, fragile mountain areas, freshwater wetlands, significant wildlife habitat, coastal wetlands and sand dunes systems continue and that the Department of Environmental Protection provide coordination and vigorous leadership to develop programs to achieve the purposes of this article. The well-being of the citizens of this State requires the development and maintenance of an efficient system of administering this article to minimize delays and difficulties in evaluating alterations of these resource areas.

The Legislature further finds and declares that the cumulative effect of frequent minor alterations and occasional major alterations of these resources poses a substantial threat to the environment and economy of the State and its quality of life.

38 M.R.S.A. § 480-A (1989).

The Act also prohibits any activity involving "any construction . . . of any permanent structure" without first obtaining a permit from DEP, if the activity "is located in, on or over any protected natural resource . . . ." *Id.* §§ 480-C(1), (2)(D) (1989 & Supp. 1999). A "permanent structure" includes, but is "not limited to, piers, docks [and] . . . piles." *Id.* § 480-B(7) (Supp. 1999). A "protected natural resource" includes "coastal wetlands" which consist of, among other things, "all tidal and subtidal lands." *Id.* §§ 480-B(8), (2) (1989 & Supp. 1999). Thus, it is plain that the construction of any permanent dock over tidal lands, such as the one Johnson wishes to build, is specifically prohibited by law unless a permit for same has been obtained by DEP. The NRPA further guides DEP, however, by telling it that it is to grant a permit for a governed activity if it finds that the proposed activity "will not

unreasonably interfere with existing scenic, aesthetic, recreational, or navigational uses." 38 M.R.S.A. § 480-D(1) (1989 & Supp. 1999).

As a complement to, and after the enactment of the NRPA, the Legislature empowered BEP, subject to the APA, to "adopt . . . reasonable rules . . . necessary for the proper administration, enforcement, implementation and interpretation of any provision of law that the department is charged with the duty of administering. Rules duly promulgated shall have the full force and effect of law." 38 M.R.S.A. § 343-A (Vol. 1989) (rep'd P.L. 1989, c. 890, section A-19) (now, 38 M.R.S.A. § 341-D(1-B)). In adopting rules, BEP is required "to the extent practicable . . . to adopt performance and use standards for activities regulated by this article." 38 M.R.S.A. § 480-H (1989).

The "article" referred to in section 480-H is article 5-A of chapter 3, subchapter I of Title 38, that is, the NRPA. Thus, according to section 480-H, any rule governing environmental protection, including permitting, must adopt "performance and use standards" governed by the NRPA. Moreover, "When legislation authorizing any regulated activity requires that certain criteria be met in order that any . . . permit . . . to undertake the regulated activity be granted and when an agency determines that performance standards will assist regulated parties in complying with the criteria, the standards shall be developed during the rulemaking process and incorporated into adopted rules when performance standards are equally effective in meeting applicable statutory criteria." 5 M.R.S.A. § 8062 (Supp. 1998). All this being so, the permit by rule process must comport with the performance and use standards

articulated in the NRPA, one of which is the requirement that BEP is to issue permits only for activities which "will not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses." 38 M.R.S.A. § 480-D(1). Thus, when BEP adopts a rule and determines that a class of activities may be permitted by rule when they would otherwise require an individual permit, by concluding that the class of activities will have "no significant impact on the environment," BEP must also determine that the class of activities at issue meet the performance and use standard that the activities would "not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses." 38 M.R.S.A. §§ 344(7), 480-H, 480-D(1); 5 M.R.S.A. § 8062.[4]

## B. The Merits of Petitioners' Claims.

As noted, the two petitioners rely on nearly identical arguments in their quest to invalidate PBR 14 and void the "permit" issued to the Trust. These arguments are closely interrelated and could be addressed individually or collectively because they all make the fundamental claim that PBR 14 is invalid as a matter of law. In addressing these, the court concludes that the manner in which these assertions have been organized by the petitioners is appropriate and will be followed in this decision and order.

---

[4] DEP apparently agrees that the permit by rule standards, by virtue of 38 M.R.S.A. § 480-H, must comport with the NRPA, including the standards for the issuance of permits found at 38 M.R.S.A. § 480-D. *See* Brief of Respondent DEP at 3-4 . Johnson asserts that the PBR in question comports with the NRPA, apparently agreeing that the NRPA governs the performance and use standards for rules under the PBR process. *See* Brief of Intervenor Johnson at 3. *See also* Chap. 305, § 1(F), ("The permit satisfies the permit requirements of the Natural Resources Protection Act (Title 38 M.R.S.A., Section 480-C). . . .").

## 1. BEP exceeded its authority when it promulgated PBR 14.

A party aggrieved by an agency's adoption of a rule may challenge that rule by asserting that it exceeds the rulemaking authority of the agency and is therefore void. Such a party need not exhaust administrative remedies when attacking the rule and may do so via collateral attack so that the party is not precluded from judicial review of the rule "in any civil or criminal proceeding." *Gross v. Secretary of State*, 562 A.2d 667, 670 (Me. 1989); 5 M.R.S.A. § 8058(2) (1989).[5]

As discussed earlier, BEP has the authority to adopt rules regulating those environmental activities that are overseen by DEP. 38 M.R.S.A. § 341-D(1-B). The construction of docks, piers, and piles is such an activity. *Id.* §§ 480-C(1), (2)(D); 480-B(7), (8). However, the board must, in promulgating the rules covering this activity, determine that the activity will be permitted only if it meets the standard that "it will not unreasonably interfere with existing, aesthetic, recreational or navigational uses," 38 M.R.S.A. § 480-D, because the performance and use standards of rules adopted by BEP must contain provisions that are equally effective in meeting the criteria dictated by statute. 5 M.R.S.A. § 8062; 38 M.R.S.A. § 480-H. That being so, any rule governing a permit to construct a dock over tidal lands must, by necessity, also include a determination that the activity "will not unreasonably interfere with existing scenic, aesthetic, recreational, or navigational uses." 38 M.R.S.A. § 480-D(1).

---

[5] The argument advanced by Johnson that the petitioners are barred by collateral and equitable estoppel principles from claiming that PBR 14 is inconsistent with the NRPA is thus without merit. *See* Brief of Intervenor Johnson at 5-6. To the court's knowledge, there has been no previous litigation among these parties over the legal viability of PBR 14. Moreover, the fact that BEP heard from other environmental groups before adopting PBR 14 hardly serves to estop others, including private parties, from attacking the validity of this rule thereafter.

10

Any rule which does not entail this standard or equivalent criterion is one which the Legislature has not authorized and is void as ultra vires.

At the outset of any discussion as to the legitimacy of an agency-adopted rule, it is important to recognize that the regularity of a rule is presumed and it is to be assumed that the agency acted with full knowledge of material facts in justification of the rule. *Central Me. Power Co. v. Waterville Urban Ren'l. Auth.*, 281 A.2d 233, 242 (Me. 1971). The presumption of regularity, however, cannot legitimize a rule that an agency adopted without authority and which is contrary to law. *Bangor Baptist Church v. Me. Dep't of Ed.*, 549 F.Supp. 1208, 1229 (D.Me. 1982).

As noted earlier, rules promulgated by BEP authorizing activity overseen by DEP must adopt performance standards, to the extent practicable, so that the permitted activity "will not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses." 38 M.R.S.A. §§ 480-D(1), 480-H.

It should be first observed that PBR 14 fails to meet this requirement because, for reasons unexplained, it omits any reference to "recreational uses" in its purpose section, and tells the reader instead that, "[t]hese standards are designed to insure that piers, wharves, and piling projects will not unreasonably interfere with existing scenic, aesthetic or navigational uses or will not unreasonably harm estuarine or marine fisheries or lower water quality." Chap. 305, § 14(C)(1). While this omission might otherwise be simply characterized as a scrivener's error in not fully tracking the applicable statute, an examination of the standards at paragraph D of the rule reveal that none address interference with "existing . . . recreational uses." 38

11

M.R.S.A. § 480-D(1). Thus, it appears that BEP, in adopting PBR 14, not only failed to mention recreational uses, it also set no standards to be sure that docks or piers authorized via PBR 14 would "not unreasonably interfere with existing . . . recreational uses."[6] *Id.* Such omissions contravene BEP's mandate to adopt rules that include criteria consistent with the body of legislation which authorized the rulemaking. 5 M.R.S.A. § 8062; 38 M.R.S.A. § 480-H.

Next, although the "purpose" section of PBR 14 references scenic and aesthetic uses, the standards which follow do not address these uses. While setting scenic and aesthetic standards might entail entirely subjective and debatable criteria so that establishing them might be quite difficult, indeed constitutionally suspect, *Kosakala v. Town of Georgetown*, 2000 ME 106, ¶ 17, 752 A.2d 183, 187, the lack of standards and criteria as to these uses demonstrates that PBR 14 was adopted without reference to the standards articulated in the enabling statutes.[7]

All of the standards adopted under PBR 14 address three other topics: the application process; the protection of vegetation, wildlife, water, and abutters' interests; and the dimensions of the proposed pier. The respondents argue that the

---

[6] Arguably, PBR 14, in allowing the construction of piers, whether commercial, public or private, might, in the eyes of some, enhance recreational use of a particular body of water, but the standards say nothing about the potential of such piers interfering with *existing* recreational uses. Thus, an applicant, DEP, or other person would have no standards to judge if a proposed pier might interfere with existing recreational uses such as those attendant to a nearby pier, beach, or the like.

[7] Because of the difficulty in setting criteria so that permitted activities under PBR 14 do not "unreasonably interfere with existing scenic, [and] aesthetic . . . uses," 38 M.R.S.A. § 480-D, it may be that the permit by rule process is simply inappropriate for saltwater docks, piers and piles. The court ventures no opinion in this regard, however, and on remand, those with superior expertise in this regard may well be able to establish such standards.

12

standards governing the dimensions of proposed piers adequately address the need for criteria ensuring that a proposed pier does not "unreasonably interfere with existing . . . navigational uses," as required by 38 M.R.S.A. § 480-D(1).

Paragraph 8 of PBR 14 advises that a private pier is not to exceed six feet in width and is "limited to the minimum size necessary to accomplish [its] purpose." Paragraph 9 further advises that piers "shall not extend across more than 25 percent of any channel at mean low water. No structures shall extend into a designated federal channel." No explanation in PBR 14 is provided as to how these standards insure that a dock authorized by this rule would not unreasonably interfere with existing navigational uses. Certainly, a dock which is to be limited in size "necessary to accomplish [its] purpose," allows the person constructing the dock with a particular purpose in mind to set the dimensions of that structure to meet his needs and without regard to interference with existing navigational or other uses. Moreover, no standards are set in this same paragraph as to the appurtenant ramps and floats which can, of course, create a navigational hazard as they extend out into tidal water beyond the low water mark.

The same observation can be made as to the standard in paragraph 9 that a pier may extend no further than 25% into any channel, except federally designated channels, at low water. Without reference to the navigational uses and needs of a particular body of water, it is impossible to determine if a 25% intrusion would unreasonably interfere with the existing navigational uses of that waterway. Moreover, BEP, which is required by 5 M.R.S.A. § 8062 to set standards that are

13

equally effective as those set by statute so that regulated parties can comply with the criteria, does not advise those parties what a "channel" is.

There is also ambiguity between paragraphs 8 and 9 of PBR 14. Paragraph 8 reads, in part, ". . . piers shall not extend below the low water line." Paragraph 9 advises "structures shall not extend across more than 25% of any channel at mean low water." Assuming that "structure" means "permanent structure," as defined in subparagraph B(2) of PBR 14 and therefore includes piers, *see also* 38 M.R.S.A. § 480-B(7), and assuming, absent a definition, that a channel only exists at low tide when it contains water and is seaward of the low tide line,[8] then paragraph 9 would appear to allow a pier to extend beyond the low water mark, contrary to the prohibition in paragraph 8. If "structure" in paragraph 9 means appurtenances to a permanent structure, such as ramps and floats referred to in paragraph 8, then only the ramp and float off of a proposed pier, and not the pier itself, could extend up to 25% across any channel at mean low water.[9] Obviously, such ambiguities fail the test of assisting regulated parties so that they may comply with the criteria of rules governing a regulated activity. 5 M.R.S.A. § 8062.

---

[8] A channel that loses all its water at low tide would be difficult, perhaps impossible, to identify and certainly, at that time, would be unnavigable. Hence, at a minimum, a reasonable definition of a channel, particularly for those who must comply with rules which do not define "channel," would contemplate a waterway containing water at low tide.

[9] As further support for the court's understanding that "a channel" would exist at low water only when it contains water and is seaward of the low water line, it is obvious that a ramp or float, extending from a pier which ends at the low water line, would sit on water; otherwise such an appurtenance would be useless when the tide is out.

14

In the end, while paragraphs 8 and 9 of PBR 14 were apparently designed to address navigational uses, they are ambiguous, they provide no explanation as to how these standards might affect existing navigational uses on Maine's varied tidal waterways and, most importantly, they leave DEP applicants and DEP with no readily understandable and enforceable criteria so that the performance and use standards would comply with the law's mandate that construction of a structure pursuant to PBR 14 would "not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses." 38 M.R.S.A. § 480-D(1). That being so, and for the other reasons cited herein, the court must conclude that BEP's adoption of PBR 14 was in excess of its rulemaking authority and must therefore be declared invalid.

2.    **PBR 14 is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law.**

As their second argument in support of their contention that PBR 14 is an invalid rule, the petitioners again turn to 5 M.R.S.A. § 8058 and argue that PBR 14 is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."

"Arbitrary or capricious action on the part of an administrative agency occurs when it can be said that such action is unreasonable, has no rational factual basis justifying the conclusion or lacks substantial support in the evidence." *Central Me. Power Co.*, 281 A.2d at 242, *cited with approval in Help-U-Sell, Inc. v. Me. Real Estate Comm'n*, 611 A.2d 981, 984 (Me. 1992). Or, as articulated in a case relied on by respondent, DEP,

15

> An agency rule is arbitrary and capricious if the agency lacks a rational basis for adopting it -- for example, if the agency relied on improper factors, failed to consider pertinent aspects of the problem, offered a rationale contradicting the evidence before it, or reached a conclusion so implausible that it cannot be attributed to a difference of opinion or the application of agency expertise.

*Associated Fisheries of Me., Inc., v. Daley,* 127 F.3d 104, 109 (1st Cir. 1997). As earlier noted, the party asserting arbitrariness and unreasonableness of action by administrative officials has the burden of establishing this claim as regularity of rulemaking is assumed. *Central Me. Power Co.,* 281 A.2d at 242.

After a review of the record, this court concludes that the petitioners have met this burden of persuasion and that PBR 14 is arbitrary, capricious or was adopted in an abuse of discretion by BEP.

The record provided to the court as to the process which amended the rules in chapter 305 to include PBR 14 consists of a transcript of the February 12, 1992 hearing on the proposed rules; a copy of a document entitled, "Response to Comments," which was apparently authored by a DEP official; and several forms used to comply with the APA. From this, it appears that DEP prepared the rules to be considered, including PBR 14, that a public hearing and comment period were administered, and that BEP adopted PBR 14 as written with only a minor modification.[10] No record has been provided which reflects any deliberative process

---

[10] *See* R. 28 at 11, ¶ 47 (adding paragraph (C)(4) to PBR 14 so that an applicant would be advised that a separate permit from ACOE will also have to be obtained in order to construct a pier).

16

on the merits of those rules by BEP, nor does the court have a record of any vote taken by BEP to adopt the rules.[11]

From an examination of this record, the court can make four conclusions. First, the primary reason to expand the PBR process to include PBR 14 and the other new rules in 1992 was to save DEP money and staff time which entailed making a choice as to which activities could be licensed without "a full NRPA review." R. 5 at 3, 6-7, 26-27. BEP did not question the propriety of this decision-making priority. Second, a number of parties testified and presented written comments criticizing PBR 14 before it was formally adopted. DEP's response to this criticism was that, given the variations in tidal waters throughout the State, it would be too restrictive to limit the maximum length of docks; and if the rules were to do so, many projects could not use the PBR program. DEP responded further that the length of piers and wharves will be governed by their cost and the size of vessels intended for them. R. 4, "Response to Comments," p. 11. Third, some aspects of PBR 14 are intended to address environmental concerns, namely, the protection of emergent marsh vegetation and the use of chemicals on pilings. Fourth, the standard in PBR 14 which limits the length of a structure to an extension of 25% into a channel was represented as a requirement of the Army Corps of Engineers (ACOE) to insure that navigation is not impeded so that where navigation channels exist, they can be used safely.

---

[11] Included in the record is a certificate by the commissioner of DEP that the rules were lawfully adopted by BEP on March 25, 1992. R. 4 at 1.

17

With the exception of the third conclusion to be drawn from the record, which addresses an environmental concern, albeit one which is only tangently related to "existing scenic, aesthetic, recreational or navigational uses," the remaining factors demonstrate that the decision-making in adopting PBR 14 was arbitrary, capricious, an abuse of discretion, and not in accordance with law. 5 M.R.S.A. § 8058.

With specific reference to the fourth conclusion to be drawn from the record, namely the 25% limitation on the length of piers into channels, the court further concludes that this standard was arbitrarily arrived at and represents a performance standard that is not equally effective in meeting the statutory standard of no unreasonable interference "with existing scenic, aesthetic, recreational or navigational uses." 38 M.R.S.A. § 480-D(1).

In approaching a discussion of this standard, it is first necessary to conclude that DEP's attachment B to its brief of the ACOE guidelines as to fixed structures in navigable waters is not the proper means by which to bring this document to the court's attention. If it was indeed relied upon by BEP, it should have been included in the administrative record and, if it was inadvertently excluded, DEP should have brought a motion to have the record supplemented. 5 M.R.S.A. § 11006(2); M.R. Civ. P. 80C(d). Instead, DEP asks the court to take judicial notice of this unauthenticated document to which the petitioners understandably protest. Consistent with the court's prior ruling in this matter as to CLF's request for judicial notice of Johnson's surrender of his individual permit, the court will decline to take notice of these

18

ACOE guidelines as it would be improper to do so under M.R. Evid. 201. *See* Field & Murray at §§ 201.1, 201.4, 201.5. at 50-51, 53-55.

Although exhibit B to DEP's brief is not properly before the court, an examination of these ACOE guidelines supports the petitioners' position rather than DEP's as to the arbitrariness of the 25% standard. At paragraph 7 of the ACOE guidelines, the observation is made that in a linear waterway such as a river, a reasonable area of public water should be maintained in the public interest for recreational purposes, not just for safety. Thus, the guideline expresses the reasoning that if structures are permitted to extend into the waterway no more than 25% at low tide, 50% of the width of the waterway will be maintained as open water.[12] This, according to the ACOE, results in an "even split between public and private interest."

It is difficult to imagine a more arbitrary "guideline." Rather than devising some rationale for the intrusion of piers into tidal waterways, the ACOE guideline simply decides to cut private and public interests in half. The private interests get docks on opposite shores that together intrude 50% into the waterway, the public gets the other 50% for recreation and safe passage. Nothing other than brief references to recreation and safety, and competing public and private interests, were apparently considered in formulating this guideline. No consideration of the requirements of various types of waterways, their respective depths, the land

---

[12] As noted hereafter, it is apparent that the ACOE comment contemplates two docks on opposite shores of a river facing one another, each of which extends 25% into the channel at low tide so that they consume together 50% of the channel. The other 50% is left for the public.

19

exposed at low tide, or water available for navigation at low tide are mentioned. So, while this guideline, mischaracterized by DEP as an ACOE regulation, could be considered as an effort to address existing recreational or navigational uses, it does so not by a consideration as to the reasonableness of permitting activities that intrude into such uses, but by arbitrarily and simply cutting the competing interests in half and leaving it at that.

While the record does not tell the court how these ACOE guidelines were presented to BEP, or if they were presented at all, if the board had examined them, they would have to have understood that the guidelines were more concerned with an equal division of the use of a river and contained no performance standards or criteria ensuring that existing recreational or navigational uses of a waterway were not unreasonably interfered with. Moreover, an examination of the guidelines reveals that they address linear waterways only, i.e., rivers, canals and narrow estuaries. PBR 14, however, addresses all tidal shorefront, whether or not there is an opposite shore. Thus, the sole purpose of the guidelines, to split public and private interests in a linear waterway, is inapplicable to the miles of coastline which face open water. That being so, the 25% intrusion into channels at low water on the ocean or open bays can find no supporting rationale in the ACOE guidelines to support such a standard, at least as to open tidal waters. Because the guidelines are represented as the origin of the 25% criterion, to rely on them for setting the performance standards for construction of docks on all tidal water frontage would be an abuse of discretion, arbitrary, and represents a failure to consider pertinent

20

aspects of the problem of setting rules affecting the lengths of docks to be constructed over coastal wetlands. *Associated Fisheries of Maine*, 127 F.3d at 109.

Aside from the one reference to the ACOE guidelines in the Response to Comments section of the administrative record, there is no other reference of any type supporting this standard; indeed, the comments provided to DEP from within and without the department are critical of the 25% channel intrusion standard. The bases for these criticisms were sound, and in the absence of anything in the record, save the one mis-reference to ACOE guidelines as "regulations," they help to illustrate the arbitrariness of this criterion.[13] Without specific reference to these comments and criticisms, however, examples abound of how a dock authorized by a simple notification form to DEP so that it can intrude 25% into a channel at low water, would not only interfere with navigational uses in particular, but would also have "a significant impact on the environment." 38 M.R.S.A. §§ 480-D(1); 344(7). One such example, among many that can be imagined, would entail a broad, shallow salt water river which at low tide has a narrow channel near one shore and, on the opposite shore, has lengthy exposed tidal flats at low tide running from the high water mark to this channel. Under PBR 14, a shorefront property owner on the

---

[13] One such comment submitted by the Natural Resources Council of Maine makes the observation that DEP does not allow permanent docks in the great ponds, but by virtue of PBR 14 would allow them on coastal wetlands. R. 11 at 4. Both the great ponds and coastal wetlands are protected by the NRPA, 38 M.R.S.A. §§ 480-A; 480-B(2), (5), (8); 480-C (1989 & Supp. 1999). No response by DEP to this comment can be found in the record. However, without an explanation, this comment appears to support the conclusion as to the arbitrariness of PBR 14, the primary purpose for which was to save DEP time and money, and prompts a variety of questions such as the rationale behind protecting one type of bodies of water with an absolute ban on docks and allowing activities on another by way of a simple notification form.

21

opposite shore could construct a pier over the entire length of the flats and have it intrude 25% into the narrow channel close to the other shore. Not only would such a structure potentially be of considerable length, it would also obviously present a significant navigational hazard at high tide. The point of this example, those cited by the commentators to the rule, and in the petitioners' briefs, is to illustrate that in Maine, with its long and varied coastline, beaches, tidal marshes and rivers of varying dimensions, a hard and fast rule as to the maximum length of docks expressed as a percentage intrusion into a channel simply cannot assure either that a permitted activity will not unreasonably interfere with "existing scenic, aesthetic, recreational or navigational uses," 38 M.R.S.A. § 480-D(1), or that it will have "no significant impact on the environment." 38 M.R.S.A. § 344(7). Similar observations and examples can be made as to another limitation on dock size in PBR 14, namely, that docks "be limited to the minimum size necessary to accomplish their purpose," subject only to the 25% restriction. Chap. 305, § 14 (D)(8), (9). *See* discussion, *infra*, p. 13.

DEP counters the petitioners' arguments with four essential points: PBR 14 is based on numerous well-considered standards that are clear; the 25% standard is a reasonable one to protect existing uses; DEP can reject a dock that exceeds "the minimum size necessary to accomplish [its] purpose;" and a review panel later approved the PBR process and found it effective.

The first two of these arguments have been adequately addressed in this opinion. As to the claim that DEP can deny a permit by rule "if the proposed dock is

determined to be larger than necessary for the purposes for which it is intended," Brief of Respondent DEP at 10, no explanation is given how DEP could do so as the one-page permit by rule notification form designed for all PBR activities never asks the applicant to advise DEP as to the purposes for which a dock is intended and how the length of a proposed dock would meet those purposes. R. 29. The rule does tell an applicant, however, that he must "provide evidence of a need to undertake an activity under this Rule." Chap. 305, § 14(D)(1). It is also unclear how this requirement is enforced, however, as nothing in the record shows that Johnson provided any evidence of his "need" or "purposes" for a dock and the permit by rule notification form does not ask for this information. Indeed, given that the PBR process is, in essence, a speedy "permit by default" process, it is questionable how DEP could assess the propriety of an applicant's stated need and purposes. All of this suggests that, contrary to its argument, DEP does not require applicants for a permit under PBR 14 to advise it as to the need and intended purpose of a proposed dock.

With respect to the report of the Land and Water Resources Council, which DEP has attached to its brief as exhibit A, as with other late submissions offered by this party and CLF, it cannot be considered by the court via judicial notice. M.R. Evid. 201(a) only permits consideration of adjudicative facts and would not allow a review, by way of evidence, of "legislative facts." M.R. Evid. 201(a) adviser's note, Field & Murray at 49. As previously observed, the parties had other means to supplement the record and their failure to do so will not be cured by reliance on an evidentiary rule of questionable applicability.

Even if this report were to be considered by the court, it is of little value. It was authored years after PBR 14 was adopted and, therefore, is of no relevance as to whether or not this rule was adopted ultra vires, or is arbitrary, capricious or an abuse of discretion. While the report endorses the PBR process and finds that it has had little negative effect on the State's environment, such findings have no bearing in this case because the merits of the PBR process, its effectiveness in protecting the environment, and the high compliance rate of permittees are not at issue in this case.

From all of this, and based on the administrative record, it is plain that PBR 14 and the process used in its adoption gave little or no attention to the law's requirement that activities to be permitted by BEP and DEP "will not unreasonably interfere with existing scenic, aesthetic, recreational or navigational uses." 38 M.R.S.A. § 480-D(1). Instead, the exercise of discretion by BEP and the advice by DEP emphasized the expediencies of cost-cutting, use of departmental staff time, applicant convenience and control, and was based, in one important respect, upon an arbitrary guideline that has little rational relationship to the need to protect Maine's tidal waters. As such, even if BEP had not acted in excess of its rulemaking authority, PBR 14 must nevertheless be declared void as arbitrary, capricious and based on an abuse of discretion. 5 M.R.S.A. § 8058.

3.      PBR 14 violates the State's Public Trust Doctrine.

As the third prong of their related arguments that PBR 14 is invalid as contrary to law, the petitioners contend that it also violates the public trust doctrine.

24

The public trust doctrine "is the concept that Maine's tidal lands and resources . . . are held by the State in a public trust for the people of the State." *James v. Inhabitants of the Town of West Bath*, 437 A.2d 863, 865 (Me. 1981). With reference to the responsibility of enforcing this trust, the concept has been expressed more fully as follows:

> In view of the common law principle that the intertidal and submerged lands are impressed with a public trust, a principle that reflects the unique public value of those lands, we believe that any legislation giving up any such public rights must satisfy a particularly demanding standard of reasonableness.

*Opinion of the Justices*, 437 A.2d 597, 607 (Me. 1981).

The "public rights" referred to are usually described as the right to navigate, fish and fowl for business or pleasure in the intertidal area which the State may protect for the public by virtue of an easement over this area for this purpose. *Bell v. Town of Wells*, 557 A.2d 168, 173 (Me. 1989). This is so, even though the intertidal area may be held in fee by a private party. *Id.* Such a private party has, however, "subject to reasonable restrictions, the right to wharf out to the navigable portion of the body of water." *Great Cove Boat Club v. Bureau of Public Lands*, 672 A.2d 91, 95 (Me. 1996). The "reasonable restrictions" are the regulations by the State in the exercise of its public trust rights which it may exercise "by requiring the upland owner to acquire a license before building a dock." *Id.* (citing *Whitmore v. Brown*, 102 Me. 47, 56; 65 A. 516, 520 (1906)). Obviously, the construction of a dock over intertidal land interferes with the public's right to navigate, fish, and fowl to some extent, depending on the dimensions of the dock and the characteristics of the

25

body of water. Thus, when the State cedes that right to private parties by virtue of its right to regulate the intertidal area and the construction of docks there via the public trust doctrine, the release of such public rights by regulation to build docks must satisfy "a particularly demanding standard of reasonableness." *Opinion of the Justices*, 437 A.2d at 607.

PBR 14 does not meet such a standard. Without repeating what has already been discussed in this opinion, it will suffice to refer to just two of the previously described shortcomings of this rule. First, the rule provides for the length of a dock to be limited to the size necessary to accomplish the purpose of the dock. Obviously, as the builder of the dock, it is the owner who determines what its purpose will be and, therefore, will also determine its length, subject to the 25% maximum incursion into a channel. Such an allowance goes beyond the right to wharf out and leaves it to the upland owner to determine the length of his dock, no matter what the State's interest might be in the area where the dock is to be built. This aspect of the regulations on building docks, because it allows the upland owner to control the dimensions of the dock based on his view of its purposes, is unreasonable and therefore violates the public trust doctrine as expressed in *Opinion of the Justices*.

Next, the limitation on docks, restricting them to a 25% incursion into a channel at low tide, does not alter this conclusion, even though this criterion must be read together with the standard just referenced. It applies an arbitrary numerical percentage for incursion into low water without any supporting rationale and without any consideration for the extraordinary variations in the size, width, depth,

26

tidal flows, and characteristics of the State's tidal bodies of water. By doing so, in a nearly automatic fashion by way of the permit by rule process, the State cedes the public's rights to the intertidal area of all these bodies of water in a fashion and by rules which cannot satisfy "a particularly demanding standard of reasonableness." *Opinion of the Justices*, 437 A.2d at 607.

For all these reasons, this regulation, which purports to regulate the right of the upland owner to wharf out, violates Maine law which has entrusted the intertidal area to the State which cannot alienate this protected area by legislative or other State action unless its action meets "a high and demanding standard of reasonableness." *Id*. PBR 14 does not meet this test. Accordingly, PBR 14 must be declared invalid as in excess of agency rulemaking authority. 5 M.R.S.A. § 8058(1).

C.    Other Issues.

1.    Amendments to PBR 14.

CLF and DEP have represented to the court that chapter 305 has been amended with a "kick-out" clause.

Respondent DEP is correct in its observation that the amended rules are not included in the administrative record so are not properly before the court for review. It is also true that the intervenor's permit to build his dock was not issued pursuant to this amended version of PBR 14 so that it is irrelevant to the merits of the intervenor's position. Accordingly, exhibit 13 attached to CLF's brief is not properly before the court.

Nevertheless, as the decision and order will void PBR 14 and remand the matter back to BEP for further rulemaking, DEP and the board are advised by the content of this order that any rule governing the construction of structures over tidal land must meet the standards of the NRPA, cannot be arbitrary, capricious, in violation of law, or result from an abuse of discretion; nor can it violate the public trust doctrine. The court ventures no opinion as to whether or not PBR 13 as amended can meet these standards.

Apparently, no party argues that any amendment to PBR 13 renders moot petitioners' claims.

## 2. Other approvals of the intervenor's dock.

In his brief, Johnson asks the court to take judicial notice of the alleged fact that the Mt. Desert Planning Board and the ACOE have issued permits for the construction of his dock. In doing so, Johnson joins DEP and CLF in asking the court to supplement the record via an evidentiary rule. Consistent with the court's ruling on these other requests, the court will decline to take judicial notice of these alleged facts.

Moreover, even if these "facts" are correct, they are irrelevant to the central issue in this litigation, namely the legal viability of PBR 14. The Mt. Desert Planning Board and the ACOE undoubtedly have different rules and standards for granting permits and, at least as to the ACOE, need not be concerned about the NRPA and the public trust doctrine. Their decision-making processes and the legality of their rules are also not before this court. In the end, however, the

28

approval of this dock by other agencies simply has no bearing on DEP's and BEP's actions in adopting and applying a rule contrary to State law.

### 3. Standing.

In his brief, Johnson reasserts the claim that the petitioners lack standing to enforce the environmental laws of the State and that only DEP and the Attorney General have such authority. In support of this contention, Johnson cites the court to 38 M.R.S.A. § 348(3) which tells DEP that it is to request the Attorney General to initiate injunctive proceedings to prevent unlawful discharges. The case at bar, of course, contains no such claims. Moreover, in a preceding paragraph of section 348, the Legislature simply empowers the Attorney General to institute injunctive proceedings to enjoin violations of the State's environmental laws. 38 M.R.S.A. § 348(1). Nothing in the text of these provisions can be read to confer exclusive authority upon the Attorney General to remedy violations of the State's environmental laws which may affect another party. Nor can these sections be read to extinguish the right of a private party to challenge the lawfulness of a state environmental law or the issuance of a permit under that law.

More importantly, as recognized in this court's order of June 25, 1999, CLF meets the test of an aggrieved party who is authorized by law to challenge final agency action. *Storer v. Dep't of Environ. Prot.*, 656 A.2d 1191, 1192 (Me. 1995). The Gagnebins also meet this legal test as they are able to demonstrate a particular injury to their property from BEP's adoption of PBR 14 and the issuance of a permit under that rule to an abutter to build a dock. *Id.* No high degree of proof is required to

29

establish a particularized injury and a party's allegations, although conclusory and lacking specificity, are minimally sufficient to withstand a challenge to that party's standing. *Anderson v. Swanson*, 534 A.2d 1286, 1288 (Me. 1987); *Hammond Lumber Co. v. Fin. Auth. of Me.*, 521 A.2d 283, 287 (Me. 1987). *See also Matter of Lappie*, 377 A.2d 441, 442-443 (Me. 1977). Accordingly, as has been previously observed, the petitioners have made a *prima facie* showing that they have standing and may, therefore, seek to challenge the lawfulness of the respondents' actions in this civil action. 5 M.R.S.A. § 8058; *Matter of Lappie, id.*; 14 M.R.S.A. § 5954.

### D. Motion to Supplement Pleadings.

Both petitioners have filed motions to supplement their pleadings to allege new facts which they claim have occurred since this action began and to seek injunctive relief, namely an order to the intervenor to remove his dock.

At the oral argument on the merits of the petitions, the parties agreed that any action on these motions be deferred until the merits of the petitions were addressed because, if the respondents prevailed on the merits, the motions to supplement would be moot. Because the respondents have not prevailed, the clerk will be directed to set those motions for hearing. If the motions are granted, the court anticipates the need for a testimonial hearing as to the facts that may be in contest and the propriety of any equitable relief.

### IV. Conclusion.

A. The court GRANTS the petitions and:

30

(1)     DECLARES and FINDS that Maine Department of Environmental Protection Chap. 305 § 14 (PBR 14, now PBR 13) is void as ultra vires, and because its adoption was arbitrary, capricious, an abuse of discretion, or not in accordance with the law of Maine, including "the public trust doctrine," so-called;

(2)     DECLARES and FINDS that permit #19924 issued on May 4, 1998, to Prock Marine Company by the Department of Environmental Protection is invalid as it was based on an unlawful regulation;

(3)     REMANDS this matter, in part, to the Board of Environmental Protection for rulemaking as to permits for structures over tidal lands that are to be consistent with this decision and order;

(4)     ORDERS the parties to request a testimonial hearing citing the reasons therefor on the motions to supplement pleadings within 20 days of the date of this order; if no request for a testimonial hearing is made, the parties may file supplementary briefs addressing these motions within 30 days of this order;

(5)     DIRECTS the clerk to set the motions to supplement the pleadings for hearing no sooner than 40 days from the date of this order.

The clerk may incorporate this decision and in the docket by reference pursuant to M.R. Civ. P. 79(a).

So ordered.

Dated: August 3, 2000

John R. Atwood
Justice, Superior Court

31

Action ── Petition for Review ───────
                    80C

Charles L. & Constance C. Gagnebin    vs.  State of ME, Dept. of Environmental Prot.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| XXhaxxXexxXXxxXxxXXonstanxexXXXXXagnebinxxXXexxXXSxX XXXXXXXXXXXXXXXXXXXXXX XXexxxxxdxxxMaxxxxXXOXxXxX Gregory Cunningham Esq (Co-counsels) Jeffrey Thaler Esq xxxxCxpxxxxxSxxxPO BOx 9729 XXXXXXXXXXXXXXXXXXxXXXXXxXPortland 04104 | ─ Gerald D. Reid, Esq. 6 State House Station Augusta, Maine 04333-0006 Robert Cleaves, Esq. (Johnson) One Portland Sq. Portland Maine  04112 James Kilbreth, Esq. |

| Date of Entry | |
|---|---|
| 11/24/98 | Petition for Review of Final Agency Action in Re PBR #19924 Rule 80C, M.R.Civ.P., filed. s/Gagnebin,Pro Se Certificate of Service, filed. s/ Gagnebin, Pro Se |
| 12/22/98 | Motion to intervene by Edward C Johnson,IV with incorporated memorandum of law filed.  s/Meyers,Esq. |
| 12/24/98 | Index to administrative Record and Record, filed. (in vault in bottom Certification of Record, filed.                          drawer in grey cabinet) |
| 12/28/98 | Notice of briefing schedule sent to atty and Pltf. |
| 1/28/99 | Motion to consolidate with civil action AP98-45 including memorandum in support filed.  s/Gagnebin III Pro Se Motion to extend time in civil action AP98-45 for petitioners brief including memorandum in support filed.  s/Gagnebins,Pro Se |
| 2/3/99 | Opposition to petitioners motions to consolidate and to extend time in which to file brief with incorporated memorandum of law filed. s/Meyers,Esq. |
| 2/5/99 | Letter regarding the omittal of AAG Reid filed.  s/Meyers,Esq. |
| 2/16/99 | Petitioners response to respondents opposition to petitioners motions to consolidate and extend time filed.  s/Gagnebin III Pro Se |
| 2/26/99 | Appearance filed.  s/Cunningham,Esq. |
| 3/2/99 | Hearing had on Motion to Consolidate and Motion for Extension with Justice Studstrup, presiding.  Tape #472 Edward Johnson, Esq. for the Plaintiff, Carol Blasi, Esq.(AP98-45) Gerald Reid, AAG and Jeffery Meyers, Esq. for the Defendant.. Oral arguments made to court. Court doesn't feel cases should be consolidated before Judge Atwood decides AP98-45 Court GRANTS Motion to Extend. |

| Date of Entry | Docket No. |
|---|---|
| ------- | MOTION TO EXTEND TIME IN CIVIL ACTION AP-98-45 FOR PETITIONERS' BRIEF INCLUDING MEMORANDUM IN SUPPORT, Studstrup, J. After hearing, the motion is granted and time to file the brief is extended until hearing on the motion to consolidate. Copies mailed to attys. of record. |
| 7/12/99 | Joint notice on petitioners motions to consolidate and to extend time in which to file briefing schedule filed. s/Reid,AAG s/Thaler,Esq. s/Blasi,Esq s/Cleaves,IV,Esq. |
| 7/14/99 | JOINT NOTICE ON PETITIONERS' MOTIONS TO CONSILIDATE AND TO EXTEND TIME IN WHICH TO FILE BRIEF AND JOINT MOTION FOR BRIEFING SCHEDULE, Marden, J. Without objection, motion Granted Copies mailed to attys. of record. |
| 11/3/99 | Brief of petitioners Charles and Constance Gagnebin,III filed. s/Cunningham,Esq. |
| 9/3/99 | Motion to supplement pleadings of petitioner Conservation Law Foundation filed. s/Blasi,Esq. Request for hearing field. s/Blasi,Esq. Proposed order filed. Brief of petitioner Conservation Law Foundation filed. s/Blasi,Esq. |
| 9/15/99 | Letter from Atty. Cunningham informing the court that Petitioners withdraw their argument located in Section C(2) of brief on page 2, filed. s/Cunningham, Esq. |
| 9/16/99 | Motion to Supplement Pleadings of Petitioner Charles and Constance Gagnebin, III, filed. s/Cunningham, Esq. Request for Hearing, filed. Proposed Order, filed. |
| 9/24/99 | Intervenors opposition to petitioners motion to supplement pleadings filed. s/Hederich,Esq. |
| 10/1/99 | Brief of Petitioner Conservation Law Foundation, filed. s/Blasi, Esq. |
| 10/4/99 | Petitioners' Motion for Enlargement of Time, filed. s/Thaler, Esq. Proposed Order,filed. (filed 10/1/99) |
| 10/4/99 ------- ------- | Brief of Intervenor Edward C. Johnson, IV, filed. s/Cleaves, Esq. Brief of Respondent State of Maine, Department of Enviromental Protection, filed. s/Reid, AAG. ORDER ON PETITIONERS' MOTION FOR ENLARGEMENT, Hjelm, J. Gagnebin Petitioners reply brief is due on or before October 8, 1999. Copies mailed to attys of record. |
| 10/8/99 | Reply Memorandum in Support of Petitioer Conservation Law Foundation's Motion to Supplemental Pleadings, filed. s/Blais, Esq. |
| 10/8/99 | Petitioners reply to intervenors opposition to petitioners motion to supplement pleadings filed. s/Cunningham,Esq. |
| 10/19/99 | Reply Brief of Petitioner Conservation Law Foundation, filed. s/Blasi, Esq. |
| 10/20/99 | Replacement cover letter for the reply brief of petitioner filed. s/Totman |

| Date of Entry | Gagnebin vs. DEP | Docket No. AP98-95 Consolidated with AP98-45 |
|---|---|---|
| 10/21/99 | Reply Brief of Petitioners Charles Gagnebin, III and Constance Gagnebin, filed. s/Cunningham, Esq. | |
| 3/16/00 | Entry of Appearance for Edward Johnson by James Kilbreth, Esq., filed. | |
| 4/6/00 | Hearing had with Justice Atwood, presiding. Tape #525,526 Index 4889-5068 5174-7166, 0001-1058<br>Carol Blasi, Esq. for the Plaintiff, Gregory Cunningham, Esq. co-counsel for the Plaintiff. Gerald Reid, AAG for the State and James Kilbreth,, Esq. for the Defendant.<br>Oral arguments made to the Count.<br>Court to take matter under advisement. | |
| 8/4/00 | DECISION AND ORDER, Atwood, J.<br>The clerk may incorporate this decision and in the docket by reference pursuant to M.R.Civ.P. 79(a).<br>So Ordered.<br>Copies mailed to attys of record.<br>Copies mailed to Deborah Firestone, Garbrecht Library and Goss. | |

Date Filed __6/3/98__ ___Kennebec___ Docket No. __AP98-45 Consol.with AP98-25__

County

Action __Petition for review 80C__ 

# J. ATWOOD

Conservation Law Foundation Inc.   vs. State of Me., EPA

| Plaintiff's Attorney | Defendant's Attorney James Kilbreth, Esq. |
|---|---|
| Carol Blasi,Esq. | Jacqueline Rider,Esq. (Johnson) |
| 120 Tillson Ave | Robert E. Cleaves,Esq. |
| Rockland Me 04841 | One Portland Sq. |
| | Portland Me 04112 |

(Gagnebin)
Jeffrey Thaler, Esq.
PO Box 9729
Portland Maine 04104

Gerald Reid AAG
State House Sta. # 6
Augusta Me 04333

~~Jeffrey~~x~~A~~xx~~Meyers~~xx~~Esq~~xx~~(Johnson)~~
~~One~~x~~Portland~~x~~Square~~x
~~Portland~~xx~~Maine~~x~~04112~~x~~0586~~xx

| Date of Entry | |
|---|---|
| 6/3/98 | Petition for review of final agency action filed.  s/Blasi,Esq. |
| 7/6/98 | Motion to intervene by Edward C. Johnson,IV with incorporated memroandum of law filed.  s/Rider,Esq. Proposed order filed. Position of Edward C. Johnson,IV filed.  s/Rider,Esq. Request for hearing filed.  s/Rider,Esq. |
| 7/6/98 | Certification of the record filed.  s/Reid,AAG |
| 7/10/98 | Copy of letter to Comm Sullivan filed.  s/Blasi,Esq. |
| 7/16/98 | Motion to dismiss by Edward C. Johnson,IV with incorporated memorandum of law filed.  s/Cleaves,IV,Esq. Request for hearing filed.  s/Cleaves,IV,Esq. Proposed order filed. |
| 8/4/98 | ORDER ON MOTION TO INTERVENE, Atwood, J. (dated 7/31/98) It is hereby ORDERED that Edward Johnson IV may intervene as a Defendant in in the above captioned action. Copies mailed to attys of record. |
| 8/4/98 | Motion to enlarge time to file petitioners brief and responses to motion to dismiss through September 10, 1998 and incorporated memorandum of law; and request for scheduling order filed.  s/Blasi,Esq. (Filed on 8/3/98) |
| 8/4/98 | Motion for an expedited hearing on motion to dismiss by Edward C. Johnson, IV with incorporated memroandum of law filed.  s/Rider,Esq. s/Cleaves,Esq. Proposed order filed.   (Filed on 8/3/98) |
| 8/4/98 | Memorandum of law in opposition to intervenors motion to dismiss filed. s/Blasi,Esq. |
| 8/5/98 | Letter from Reid, AAG informing that the State will not be taking position in reference to the pending Motion to Dismiss, filed. |
| 8/10/98 | Proposed order on motion to extend time filed.  s/Blasi,Esq. |
| 8/10/98 | Intervenors opposition to plaintiffs motion for enlargement of time with incorporated memorandum of law filed.  s/Meyers,Esq. |

| Date of Entry | Docket No. _____ |
|---|---|
| 8/10/98 | Intervenors reply to petitioners opposition to motion to dismiss with incorporated memorandum of law filed. s/Cleaves,Esq.<br>Intervenors supplemental motion to dismiss for lack of standing filed. s/Cleaves,Esq.<br>Request for hearing filed. s/Cleaves,Esq.<br>Proposed order filed. |
| 8/14/98 | Letter informing the Court that parties have agreed to an extension of time to file briefs on the merits filed. s/Blasi,Esq. |
| 8/28/98 | Memorandum of law in opposition to intervenors motion to dismiss for lack of standing filed. s/Blasi,Esq.<br>Affidavit of Constance Jordan filed.<br>Affidavit of Charles L Gagnebin III filed.<br>Affidavit of Edward Myers filed.<br>Affidavit of Peter Shelley Esq. filed. |
| 9/4/98 | Intervenors motion for enlargement of time within which to file reply memorandum filed. s/Soltan,Esq.<br>Proposed order filed. |
| 9/8/98 | Reply memorandum of intervenor Edward C Johnson, IV in support of motion to dismiss for lack of standing filed. s/Horton,Esq.<br>Affidavit of Robert E Cleaves,IV filed. |
| 9/10/98 | Attachments to Affidavit of Mr. Cleaves, filed. s/Horton, Esq. |
| 9/11/98 | Additional attachment to Affidavit of Mr. Cleaves, filed. s/Horton, Es |
| 9/17/98 | Intervenor's Motion to Strike Pleading and Affidavits and for Discovery and Evidentiary Hearing, filed. s/Horton, Esq.<br>Intervenor's Motion for Evidenttiary Hearing on Issue of Standing, filed. s/Horton, Esq.<br>Proposed Order Granting Intervenor's Motion for Evidentiary Hearing, filed.<br>Proposed Order Granting Intervenor's Motion to Strike Pleading and Affidavots and for Discovery and Evidentiary Hearing, filed. |
| 10/2/98 | Supplemental index to record filed. s/Reid,AAG<br>**(FILED IN VAULT CABINET)** |
| 10/7/98 | Memorandum of law in opposition to intervenors motions to strike pleading and affidavits, for discovery and for evidentiary hearing; and in opposition to motion for evidentiary hearing on the issue of standing filed. s/Blasi,Esq.<br>Certification of Carol A Blasi filed. |
| 10/9/98 | Motion for Sanctions Pursuant to M.R.Civ.P. 11 with Incorporated Memorandum of Law, filed. s/Blasi, Esq.<br>Proposed Order Granting CLF Reasonable Expenses Including Reasonable Attorney's Fees Pursuant to M.R.Civ. P. 11, filed. |
| 10/13/98 | Attachment to be filed with the motion for sanctions with incorporate memorandum filed. s/Blasi,Esq. |
| 10/15/98 | Amended index to the supplement record filed. s/Reid,AAG |
| 10/15/98 | Intervenors motion for enlargement of time within which to file reply memorandum filed. s/Meyers,Esq. |

Notice of setting for ___11/3/9F___

sent to attorneys of record.

| Date of Entry | Docket No. AP98-45 consol. with AP98-95<br>Conservation Law Foundation Inc., V. State of Me., EPA |
|---|---|
| 10/30/98 | Intervenor's Memorandum of Law in Reply Regarding Motion to Strike and For Evidentiary Hearing and In Opposition to Petitioner's Motion for Sanctions, filed. s/Meyers, Esq.<br>Affidavit of Edward C. Johnson, IV, filed. s/Johnson<br>Affidavit of Thomas J. Ober, filed. s/Ober<br>Notice of Appearance, filed. s/Meyers, Esq. |
| 11/4/98 | Hearing had on pending motion held on 11/3/98 with Justice Atwood, presiding Carol Blasi, Esq. for the Plaintiff, Gerald Reid, AAG for the State and Mark Horton, Esq. Intervenor and also present was Mr. Meyer. Tape #452<br>Oral arguments made to the court.<br>Court to take matter under advisement. |
| 3/5/99 | Letter from attorney Reid to Justice Atwood regarding status of motions under advisement.<br>Copy mailed to J. Atwood in Lincoln Cty. |
| 5/5/99 | Letter to Justice Atwood bringing attention to a number of events and of the pending motions filed. s/Blasi,Esq. |
| 5/10/99 | Letter regarding the status of a letter dated May 4, 1999 filed. s/Cleaves,IV Esq. |
| 5/11/99 | Letter in response to Robert Cleaves letter dated May 10, 1999 filed. s/Blasi,Esq. |
| 6/25/99 | DECISION AND ORDER, Atwood, J.<br>    Motion to Dismiss is DENIED; Supplemental Motion to Dismiss is DENIED; Motion to Strike Pleadings and Affidavits and for Discovery and Evidentiary Hearing is DENIED; Motion for Evidentiary Hearing on Issue of Standing is DENIED; Motion for Sanctions is DENIED.<br>SO ORDERED.<br><br>Copies mailed to attys of record. |
| 9/3/99 | Brief of petitioners Charles and Constance Gagnebin III filed. s/Cunningham Esq. |
| 9/3/99 | Motion to supplement pleadings of petitioner Conservation Law Foundation filed. s/Blasi,Esq.<br>Request for hearing filed. s/Blasi,Esq.<br>Proposed order filed.<br>Brief of petitioner Conservation Law Foundation filed. s/Blasi,Esq. |
| 9/15/99 | Letter from Atty.Cunningham informing the court that Petitioners withdraw their argument located in Section C(2) of brief on page 12, filed. s/Cunningham, Esq. |
| 9/16/99 | Motion to Supplement Pleadings of Peitioner Charles and Constance Gagnebin, III, filed. s/Cunningham, Esq.<br>Request for Hearing, filed.<br>Proposed Order, filed. |
| 9/24/99 | Intervenors opposition to petitioners motion to supplement pleadings filed. s/Hedrich,Esq. |
| 10/1/99 | Brief of Petitioner Conservation Law Foundation, filed. s/Blasi, Esq. |
| 10/4/99 | Petitioners' Motion for Enlargement of Time, filed. s/Thaler, Esq.<br>Proposed Order, filed. (filed 10/1/99) |

| Date of Entry | Docket No. |
|---|---|
| 10/4/99 | Brief of Intervenor Edward C. Johnson, IV, filed. s/Cleaves, Esq. |
| ------ | Brief of Respondent State of Maine, Department of Enviromental Protection, filed. s/Reid, AAG. |
| ------ | ORDER ON PETITIONERS' MOTION FOR ENLARGEMENT, Hjelm, J. Gagnebin Petitioners reply brief is due on or before October 8, 1999. Copies mailed to attys of record. |
| 10/8/99 FILE 2 | Reply Memorandum in Support of Petitioner Conservation Law Foundation's Motion to Supplemental Pleadings, filed. s/Blais, Esq. |
| 10/8/99 | Petitioners reply to intervenors opposition to petitioners motion to supplement pleadings filed. s/Cunningham,Esq. |
| 10/19/99 | Reply Brief of Petitioner Conservation Law Foundation, filed. s/Blasi, Esq. |
| 10/20/99 | Replacement cover letter for the reply brief of petitioner filed. s/Totman. |
| 10/21/99 | Reply Brief of Petitioners Charles Gagnebin, III and Constance Gagnebin, filed. s/Cunningham, Esq. |
| 3/16/00 | Entry of Appearance for Edward Johnson by James Kilbreth, Esq., filed. |
| 4/6/00 | Hearing had with Justice Atwood, presiding. Tape #525,526 Index 4889 5068,5174-7166,0001-1058. Carol Blasi, Esq. for the Plaintiff, Gregory Cunningham, Esq. co-counsel for the Plaintiff. Gerald Reid, AAG for the State and James Kilbreth, Esq. for the Defendant Oral arguments made to the court Court to take matter under advisement |

| Date of Entry | Docket No. AP98-45,AP98-95 |
|---|---|
| | Conservation Law Foundation v. State of Maine EPA |
| 3/14/00 | Entry of Appearance for Edward Johnson by James Kilbreth, Esq., filed. |
| 4/6/00 | Hearing had with Justice Atwood, presding.  Tape #525,526 Index 4889-5068, 5174-7166, 0001-1058<br>Carol Blasi, Esq. for the Plaintiff, Gregory Cunningham, Esq. co-counsel for the Plaintiff. Gerald Reid, AAG for the State and James Kilbreth,Esq. for the Defendant.<br>Oral arguments made to the court.<br>Court to take matter under advisement. |
| 8/4/00 | DECISION AND ORDER, Atwood, J.<br>The clerk may incorporate this decsion and in the docket by reference pursuant to M.R.Civ.P. 79(a).<br>So Ordered.<br>Copies mailed to attys of record.<br>Copies mailed to Deborah Firestone, Garbrecht Library and Goss. |

STATE OF MAINE

KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-98-45 &
AP-98-95

JRA- KEN- 1/22/2002

CONSERVATION LAW
FOUNDATION, INC.,

Petitioner

v.

STATE OF MAINE, DEPARTMENTAL
OF ENVIRONMENTAL PROTECTION,

Respondent

**DECISION AND ORDER**

*********************************

CHARLES and CONSTANCE
GAGNEBIN,

Petitioners

v.

STATE OF MAINE, DEPARTMENT
OF ENVIRONMENTAL PROTECTION,

Respondent

DONALD L. GARBRECHT
LAW LIBRARY

FEB 23 2002

## I.      Introduction.

In a further chapter in this appeal from agency action, two motions have been filed.  Both motions are styled as motions to amend judgment and represent that they are filed in response to this court's decision and order of May 4, 2001.  For the reasons stated herein, both motions are to be denied.

## II.     Intervenor's Motion to Amend Judgment.

In this motion the intervenor asks the court to amend its May 4, 2001 "judgment," and to alter the court's conclusion in that order that this case was disposed

of via the court's decision and order of August 3, 2000, filed on August 4, 2000. More importantly, he asks for an amendment or alteration to that earlier order which concluded that his permit to construct a dock was invalid.[1] He also asks that in the event his motion is denied, that the court nevertheless order the respondent, Department of Environmental Protection (DEP), to take no enforcement action with respect to his dock.

In opposing this motion, the Gagnebin petitioners argue that the rule relied on by the intervenor as authority to seek an amendment to the court's judgment, M.R. Civ. P. 59(e), requires that such a motion "be served not later than 10 days after the entry of the judgment." *Id.* So, because the "judgment" which invalidated the intervenor's permit was entered on August 4, 2000, these petitioners assert that this motion to amend had to have been "served" by August 14, 2000. Because it was "served" on May 14, 2001, they say, it is far too late and this court ought to conclude that the intervenor waived objection to the conclusion in the August 3 order that his permit was invalid.

In response, the intervenor argues that this court's order of August 3, 2000, did not become a judgment until May 4, 2001, when the court disposed of the petitioners' motions to supplement and motions to further supplement. Only at that time, he claims, was there a judgment within the meaning of our civil rules so that he could file a motion to amend as M.R. Civ. P. 59(e) permits. If this is correct, his motion to amend which was filed on May 14, 2001, would be timely because it was filed within 10 days of

---

[1] Technically, the permit was issued to Prock Marine Company, but this entity was simply the marine contractor which the intervenor retained to construct his dock. Thus, the dock was to be, and is, the intervenor's. So, for simplicity's sake, the permit will be referred to as though it were the intervenor's rather than his contractor's as it is the former who benefits from the permit and is the interested party in this case.

2

the May 4, 2001 decision and order. Thus, a determination as to when judgment has been entered in this case is critical to a resolution of this debate.

According to M. R. Civ. P. 54(a), a judgment "includes a decree and any order from which an appeal lies." *Id.* A judgment is final so that an appeal may be taken when it "fully decides and disposes of the whole cause leaving no further questions for the future consideration and judgment of the court . . . ." *Fern Construction Co., Inc. v. Binnall,* 443 A.2d 67, 69 (Me. 1982) (quoting *Hazzard v. Westview Golf Club, Inc.,* 217 A.2d 217, 222 (Me. 1966)). One test as to the existence of a final judgment is in its effect in concluding the rights of a party appealing the order so that if its rights are there concluded so that further proceedings after the order cannot affect them, there is a final judgment. *Hazzard,* 217 A.2d at 222-223.

Applying this guidance to the action taken in this case, it plainly appears that the decision and order of August 3, 2000, granted the petitions, declared PBR14 to be void, invalidated the intervenor's permit, and remanded the matter back to BEP for new rulemaking -- all dispositive actions contrary to the intervenor's interests and objectives in this case. As such, that decision and order would appear to be an appealable judgment. However, left pending after the entry of the August 3 order were the petitioners' motions to supplement which this court directed the clerk to set for hearing no sooner than 40 days later. This action was consistent with the court's and the parties' understanding as to the proposed course of this case: if the intervenor and the respondent were successful in defeating the challenge to PBR14 and the intervenor's permit, the court would need to take no action on the petitioners' motions to supplement as they would be afforded no remedies thereafter. If, however, as ultimately occurred, the petitioners were successful as to the core issues in this case, the

3

court would then consider their motions to supplement which asked the court to consider injunctive relief, namely the removal of the intervenor's dock -- an important issue which the intervenor and the petitioners needed to have resolved before this court would have finally acted on the disputes pending here. Said differently, if the court had not acted on the request for injunctive relief, the rights of the party who would be appealing, the intervenor, would not have been conclusively determined here and there would have been no final judgment. *Id.* Once the court had acted on the motion to supplement and its request for equitable remedies, it had finally disposed of all issues that might affect the party who would be appealing so that the judgment was final and in order for appeal. This occurred on May 4, 2001, so that the intervenor's motion to amend must be considered timely pursuant to the requirements of M.R. Civ. P. 59(e) as it was "served" 10 days later.

The Gagnebin petitioners also argue that this court ought not to consider the intervenor's motion to amend because it is barred by the principle of res judicata. According to this contention, because this court has already found the intervenor's permit to be invalid, the intervenor cannot again ask the court to consider this issue.

As noted, the intervenor relies on M.R. Civ. P. 59(e) in his quest to convince this court that it should not, or cannot, invalidate his permit -- a conclusion reached in the court's decision and order of August 3, 2000. That rule specifically authorizes a party to seek reconsideration of a judgment which the intervenor's motion plainly does. Thus, even though the intervenor's motion to amend asks the court to revisit its conclusion that the permit issued to him is invalid, the cited rule permits him to do so. Principles of res judicata do not bar this effort because, as noted above, the judgment of August 3, 2000, was not final and was left open for a determination as to remedies so that

4

M.R. Civ. P. 59(e) would authorize this court to alter, amend or reconsider the actions there taken.

Because in this court's view, the intervenor's motion to amend judgment is properly before the court, its merits must here be addressed. In this regard, as noted, this motion to amend has two objectives. The first is to have this court change its August 3, 2000 decision that the intervenor's permit to build his dock was invalid because it was based on a legally invalid rule. The second is to secure an order barring the DEP from enforcement action should he be unsuccessful with the first objective.

The intervenor first argues that the invalidation of PBR14 should not have resulted in the invalidation of his permit pursuant to that rule. He also contends that even if that were to be the effect of the court's action with respect to PBR14, the court should hear and consider the equities attendant to the annulment of his permit before "retroactively" applying this decision to the circumstances of his dock.

The primary flaw in these arguments is the claim that the court's order of August 3, 2000, has retroactive effect, that is to say, that the order unfairly reached back in time and abrogated an otherwise valid permit. This argument ignores the history of this case which reveals a concerted effort by the petitioners and others to contest the issuance of any permit to the intervenor, first an individual permit to construct a dock and, later, a permit-by-rule for the same purpose. With respect to the latter permit, the Gagnebin petitioners from the beginning of this case at the agency level claimed that PBR14 was invalid and no permit should be issued pursuant to it because of this infirmity. The intervenor knew of this challenge to PBR14 and the companion challenge to any permit issued to him under that rule because he participated in the contest over its issuance before the BEP. Decision and Order, August 3, 2000, pp. 1-3; Admin. Record

5

for *Gagnebin v. DEP*, Ex. 38, pp. 2-7, 10-12, 13-18. He also, through counsel, had expressed concerns about the advisability of going ahead with construction of the pier given its opposition and the uncertainties about "the direction that the agency and the board -- and the Superior Court allows us to go." Admin. Record, p. 18.

After the Gagnebins' appeal to the BEP was denied, these petitioners and the Conservation Law Foundation (CLF) appealed the issuance of the intervenor's permit-by-rule to this court on November 24, 1998, and June 3, 1998, respectively. Both petitions, which were joined and acted on favorably in the cited August 3, 2000 decision and order, unambiguously attacked the legitimacy of PBR14 and the issuance of the permit under this rule to the intervenor. Nevertheless, the intervenor elected to proceed with the construction of his pier, completing the same after the petitions were filed, between April 1 and 15, 1999. Stipulation p. 3, ¶ 15.

From this history, it is plain that the intervenor knew from the outset that the issuance of his permit was being challenged and that the sole basis for this effort was the claimed illegality of the environmental rule on which it rested. Thus, he must also have understood that if the rule were to be found invalid, his permit might be also. That the petitioners were successful does not make their victory a retroactive or inequitable deprivation of their opponent's property rights. Indeed, as noted, the intervenor knew his permit was under attack from the very beginning as the petitioners sought to prevent its construction prospectively, that is, before it was "apt to occur," or "apt to come to be." Webster's II New College Dictionary, 1995 ed. The action by the petitioners was timely and, when taken, would not have then affected any construction by the intervenor until he chose thereafter to take the risk that he would

succeed in this litigation and proceeded to build his dock despite the legal challenge it faced.

From this it is plain that there is no retroactive, inequitable application of the law to the intervenor's property. By similar reasoning, it is also true that he had no vested rights in the permit. As the record shows, he knew it was to be challenged as soon as it was applied for and gave some consideration to the uncertainty of his success in defending the permit's legitimacy before he began construction. *See* Admin. Record, Ex. 38, p. 18. Thus he had no firm basis to believe he had an unassailable vested right to retain the permit or build a dock pursuant to that permit. More importantly, if this argument were to prevail, then anyone granted a license or permit by a state agency could go ahead and act on that permit and retain the benefit so conferred as a matter of right, even though it is subject to a timely and legally sanctioned process to attack its issuance. This, of course, would debase the statutory process specifically designed to allow the challenge to the issuance of a permit by an agency, 5 M.R.S.A. §§ 11001-11008, which, if successful, may result in a reversal of the agency action, including the issuance of a permit. 5 M.R.S.A. § 11007(4))C). From this, the conclusion is unmistakable that the intervenor had no vested rights in the permit issued to him simply by virtue of its issuance because it was challenged in a timely and procedurally correct fashion. That being so, he also has no vested rights in the continued existence of his dock which he built during the pendency of this case, knowing that it was the subject of this appeal.

The intervenor also cites the fact that many permits to construct salt water piers have been issued under PBR14 both before and after the petitions in this case were filed. That being so, he says, it is unfair and inequitable for his permit to be invalidated and that he should therefore have a vested right in his permit just as those hundreds of

7

other permittees have. The difference, of course, between the intervenor's permit and the others issued via PBR14 is that his was the subject of a timely challenge both at the agency level and through this M.R. Civ. P. 80C process and the others apparently were not. While this might simply be a fortuitous circumstance, it does not vitiate the merits of the challenge, nor has there been any accusation or evidence that the intervenor was singled out for some untoward purpose so that he, as opposed to others, would have to defend the issuance of his permit.

In his reply memorandum, the intervenor also argues that this case at its core has been a challenge to the legitimacy of PBR14, rather than to the permit issued to him, citing an observation to like effect in a previous order of this court. Decision and Order, June 25, 1999, p. 8. That observation, however, simply amounts to an obvious comment that because the case is first a challenge to an agency rule, 5 M.R.S.A. § 8058 applies. Accordingly, the court was required to, and has, ruled on the legitimacy of PBR14 as the primary question to be resolved. Throughout this case the answer to that question was always to serve as a basis for a determination as to the validity of the intervenor's permit. This was, and is, the theory of the petitioners' case as articulated in their petitions and has been now accepted by the respondent.[2] The arguments concerning "vesting" and "retroactivity" aside, how could the result be otherwise? Said differently, if the rule on which a permit is based is found to be invalid as ultra vires, how can the permit or the pier itself be saved?

---

[2] At oral argument, counsel for the respondent made the persuasive argument that, as to the Gagnebins, this case has always been about their objection to a permit to build a dock on a lot next door to them. They found a meritorious basis on which to challenge the permit and are therefore now legitimately expecting relief.

Aside from the arguments already addressed herein, the intervenor offers two related answers to this question. The first is that the case of *Sewall v. Spinney Creek Oyster Co., Inc.*, 421 A.2d 36 (Me. 1980) stands for the proposition that when a court invalidates a statute or regulation, it ought not to automatically void prior actions taken under that statute or regulation. Instead, the court ought to "set aside" the action taken and explore "the question of fashioning an order to protect reliance interests that may have arisen" as the result, in that case, of the issuance of a lease. *Id.* at 41. Although it is unclear if there is a distinction between "setting aside" a permit and invalidating it, for a variety of reasons the *Sewall* case and its remand ordering the Superior Court to fashion a remedy to protect reliance interests is inapplicable to the case at bar.

First of all, contrary to the argument expressed in the intervenor's memorandum, the problem in the *Sewall* case did not concern an invalid regulation or statute affecting the legitimacy of the aquaculture lease issued to the appellant. Instead, the case concerned a substantive procedural defect at the hearing on the application for the lease, namely that the witnesses at that proceeding were never sworn. In the view of the Superior Court, and the Law Court, that defect rendered the hearing and the lease "unlawful." *Id.* at 39. However, the Law Court viewed voiding the lease as going "too far," apparently because the appellant and others could reasonably rely on its validity. *Id.* at 40. In this regard, although unsaid in the opinion, the reasonable reliance likely arose from the circumstance that the only defect in the entire process, albeit substantive, was a procedural one entailing not the legitimacy of the marine resources rules or the merits of the lease application, but rather the manner in which the lease hearing was conducted. That being so, the lease should simply have been "set aside"

9

and the trial court charged with determining what reliance interests might be affected by the existence of the lease in the interim.[3]

Said differently, the lease in *Spinney* was "unlawful" not because the rule on which it was based was invalid, but because the hearing process which led to its issuance was flawed. That being so, it must have struck the Law Court as unfair to void that lease because of such a procedural irregularity when parties such as the lessee had a right to rely on its issuance as though it were released in the normal course pursuant to a valid rule. In the case at bar, the rule by which the intervenor's permit was issued was adopted ultra vires, that is, beyond the rulemaking authority of the agency and as arbitrary, capricious, an abuse of discretion, and not in accordance with Maine law. 5 M.R.S.A. § 8058(1). *See* Decision and Order, August 3, 2000, pp. 9-27. As such, it is void and no permit issued on its authority may be relied on when, as here, it is challenged in a timely and procedurally lawful fashion -- a circumstance fully appreciated by the permittee from the very outset of this controversy. In that regard, the intervenor has cited no reliance interest to be protected in the issuance of this permit other than his own. As noted herein, the intervenor's argument that this reliance interest ought to be protected is an unpersuasive one in that he knew at the origin of this conflict that every aspect of his quest to construct a dock would be challenged and that his success in securing a lawful permit was uncertain. Notwithstanding this circumstance, he went ahead and built the dock and now wishes to have this decision protected.

---

3 Unfortunately, the opinion is silent as to what those reliance interests might be, and how the trial court is to fashion some means for their protection.

Next, the intervenor offers his second contention as to the issue of how his permit or his dock can be preserved. This argument, closely related to the first, is that the court ought to undertake an analysis of the particular facts and equities before finally invalidating the permit or, alternatively, order the DEP to take no enforcement action as to his dock.

The equities cited by the intervenor have already been considered herein, namely his reliance on a rule that was in existence when he applied for a permit, its "retroactive" invalidation by the court, and that many other docks were approved pursuant to this rule. The facts he cites, for which he requests an evidentiary hearing, are that the environmental impact of his dock is no different than other docks approved under the PBR program, and that the defects in the rule, such as the arbitrariness of the 25% standard for intrusion into a channel, are inapplicable to his dock.

Because the intervenor's arguments as to the equities involved in the invalidation of his permit have been found to be unpersuasive in a related context herein, what remains is a factual determination as to the environmental impact of this dock and whether or not, for example, it could have been, or should be, permitted pursuant to another set of environmental standards.

To undertake such a task, this court would, of course, be applying its very limited expertise in environmental management. Not only is this an unwise course, more importantly, it would contradict Maine's jurisprudence which unambiguously prohibits this branch of government from exercising powers granted to another. *NEOC v. Commissioner of Inland Fisheries*, 2000 ME 66, ¶ 9, 748 A.2d 1009, 1013. In this regard, as discussed in this court's decision and order of May 4, 2001, it is the DEP and the Attorney General, both elements of the executive branch, which have been assigned

11

the responsibility, in the first instance, of making permitting decisions, and, if necessary, deciding what enforcement action may be appropriate. 38 M.R.S.A. §§ 341-A(4); 341-D(2), (3); 344; 347-A. Therefore, as has already been decided in this case, the suitability of the intervenor's dock for an alternative permitting process, or the nature of any enforcement action to be taken, must be considered by these agencies.[4] The court should not, and does not, venture any opinion in this regard as to do otherwise would amount to the issuance of an advisory opinion as to the environmental suitability of the dock in question, the issuance of which would be based on a meek proficiency in environmental science and enforcement, and an unconstitutional invasion of executive functions. *NEOC v. Inland Fisheries*, 2000 ME 66, ¶¶ 9-11, 748 A.2d at 1013. That being so, this court must decline the intervenor's invitation to further explore the equities of his circumstances and the environmental "facts" concerning his dock. Accordingly, the court will also decline to alter or amend its decision and order of August 3, 2000, as modified on May 4, 2001, which invalidated the intervenor's permit to construct a dock and concluded that future enforcement or permitting decisions as to that structure were the DEP's and the Attorney General's as their discretion may lead them.

### III. Conservation Law Foundation's Motion to Amend Judgment.

This motion, filed on May 14, 2001, asks the court to amend its judgment entered on May 4, 2001, to permit it to supplement its pleadings so that it can allege acts by the intervenor resulting in the construction of his pier during the pendency of this case, so

---

[4] At oral argument on this motion, the Gagnebins, through counsel, made the compelling argument that this court, in its orders which invalidated the intervenor's permit and agreed that further action had to be taken at the agency level, in effect "set aside" the permit issued to the intervenor and did not void it, which action was consistent with *Spinney's* holding because the intervenor may apply for an "after the fact" permit and, perhaps, retain the dock.

12

that it can then, *arguendo*, establish the basis for an equitable remedy, namely the removal of the dock.

In the May 4, 2001 decision and order, this court determined that it could not permit the petitioners to proceed with a private cause of action to enforce the Natural Resources Protection Act, 38 M.R.S.A. §§ 480-A - 480-Z (Supp. 2001) and therefore denied their motions to supplement and to further supplement. Thus, by filing this motion pursuant to M.R. Civ. P. 59(e), CLF is asking the court to reconsider that conclusion and adopt its view that it should be afforded equitable relief.

As the sole basis for this request, CLF advises the court that they are not seeking to enforce the NRPA as a private cause of action but are, instead, looking to take full advantage of the Declaratory Judgments Act, 14 M.R.S.A. §§ 5951-5963. It correctly points out that this court has been asked to issue a declaration as to the validity of an agency rule and the permit issued to the intervenor pursuant to that rule. That being so, and because it was successful in its effort to have both declared invalid, it claims it is therefore entitled to further relief as "necessary and proper." 14 M.R.S.A. § 5960.

The infirmity in this argument is that it does not add to or differ from the original bases on which CLF sought approval to supplement its pleadings and obtain equitable relief, namely that the dock harms its members' "scenic, aesthetic, recreational and navigational uses." CLF's Motion to Further Supplement Pleadings, ¶ 5 (filed August 23, 2000). As this court has concluded, these uses and interests are precisely those which the DEP and the Attorney General are to enforce pursuant to a statutory mandate to that effect. *See* Decision and Order, May 4, 2001, pp. 3-5. Moreover, as also concluded, an infringement on those uses does not create a private cause of action under the legal theories thus far advanced. *Id.* pp. 4-6.

13

So, while one can understand the desires of this petitioner to take the reins of the enforcement activity in this case, were the court to permit it to do so, the variety of conflicts that might thereafter arise are obvious. For example, the DEP might decide in this case to issue "an after the fact" permit to the intervenor, If it does so, an order from this court also permitting this petitioner to remove the dock would be inconsistent with that enforcement decision. Because the latter decision is exclusively DEP's, a private party may not interfere with its functions and secure a remedy inconsistent with those police power functions of the executive branch.

That being so, this petitioner can secure no superior right to act in this case pursuant to the Declaratory Judgments Act, notwithstanding its success in having this court invalidate PBR14 and the permit issued to the intervenor.

## IV. Miscellaneous.

In section III(D), page 30, of this court's decision and order of August 3, 2000, the court used the word "respondents" twice. The text should have read "respondent and intervenor." That decision and order is hereby amended to reflect that correction.

## V. Conclusion.

The clerk will make the following entries:

(1) Intervenor's Motion to Amend Judgment is DENIED;
(2) Conservation Law Foundation's Motion to Amend Judgment is DENIED.
(3) Order of August 3, 2000, is AMENDED as indicated in section IV of this decision and order.

So ordered.

Dated: January 28, 2002

John R. Atwood
Justice, Superior Court

14

Date Filed __6/3/98__       __Kennebec__      Docket No. __AP98-45__
                        County             consolidated w/AP98-95

Action __Petition for review  80C__

# J. ATWOOD

Conservation Law Foundation Inc.     vs. State of Me., EPA

| Plaintiff's Attorney | Defendant's Attorney James Kilbreth, Esq. |
|---|---|
| ~~Carol K. Blasi, Esq.~~  PETER SHELLEY ESQ<br>120 Tillson Ave<br>Rockland  Me  04841 | Jacqueline Rider,Esq. (Johnson)<br>Robert E. Cleaves,Esq.<br>One Portland Sq.<br>Portland  Me  04112 |
| (Gagnebin)<br>Jeffrey Thaler, Esq.<br>PO Box 9729<br>Portland Maine  04104 | Gerald Reid AAG<br>State House Sta. # 6<br>Augusta Me   04333<br>~~Jeffrey A. Meyers, Esq. (Johnson)~~<br>~~One Portland Square~~<br>~~Portland, Maine 04112-0586~~ |

Date of
Entry

| | |
|---|---|
| 6/3/98 | Petition for review of final agency action filed.  s/Blasi,Esq. |
| 7/6/98 | Motion to intervene by Edward C. Johnson,IV with incorporated memroandum of law filed.  s/Rider,Esq.<br>Proposed order filed.<br>Position of Edward C. Johnson,IV filed.  s/Rider,Esq.<br>Request for hearing filed.  s/Rider,Esq. |
| 7/6/98 | Certification of the record filed.  s/Reid,AAG |
| 7/10/98 | Copy of letter to Comm Sullivan filed.  s/Blasi,Esq. |
| 7/16/98 | Motion to dismiss by Edward C. Johnson,IV with incorporated memorandum of law filed.  s/Cleaves,IV,Esq.<br>Request for hearing filed.  s/Cleaves,IV,Esq.<br>Proposed order filed. |
| 8/4/98 | ORDER ON MOTION TO INTERVENE, Atwood, J. (dated 7/31/98)<br>It is hereby ORDERED that Edward Johnson IV may intervene as a Defendant in in the above captioned action.<br>Copies mailed to attys of record. |
| 8/4/98 | Motion to enlarge time to file petitioners brief and responses to motion to dismiss through September 10, 1998 and incorporated memorandum of law; and request for scheduling order filed.  s/Blasi,Esq. (Filed on 8/3/98) |
| 8/4/98 | Motion for an expedited hearing on motion to dismiss by Edward C. Johnson, IV with incorporated memroandum of law filed.  s/Rider,Esq. s/Cleaves,Esq.<br>Proposed order filed.   (Filed on 8/3/98) |
| 8/4/98 | Memorandum of law in opposition to intervenors motion to dismiss filed.<br>s/Blasi,Esq. |
| 8/5/98 | Letter from Reid, AAG informing that the State will not be taking position in reference to the pending Motion to Dismiss, filed. |
| 8/10/98 | Proposed order on motion to extend time filed.  s/Blasi,Esq. |
| 8/10/98 | Intervenors opposition to plaintiffs motion for enlargement of time with incorporated memorandum of law filed.  s/Meyers,Esq. |

Date Filed __11/24/98__    ____Kennebec____    Docket No. __AP98-95 Consolidated with__

County

**J. ATWOOD** AP98-45

Action ___Petition for Review___
                    80C

Charles L. & Constance C. Gagnebin    vs. State of ME, Dept. of Environmental Prot.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXXXX XXXXXXXXXXXXXXXXXXXX Gregory Cunningham Esq (Co-counsels) Jeffrey Thaler Esq XXXXXXXXXXXXXPO BOx 9729 XXXXXXXXXXXXXXXXXXXXXXXXXXPortland 04104 | _ Gerald D. Reid, Esq. 6 State House Station Augusta, Maine 04333-0006  Robert Cleaves, Esq. (Johnson) One Portland Sq. Portland Maine  04112  James Kilbreth, Esq. |

| Date of Entry | |
|---|---|
| 11/24/98 | Petition for Review of Final Agency Action in Re PBR #19924 Rule 80C, M.R.Civ.P., filed. s/Gagnebin,Pro Se Certificate of Service, filed. s/ Gagnebin, Pro Se |
| 12/22/98 | Motion to intervene by Edward C Johnson,IV with incorporated memorandum of law filed.  s/Meyers,Esq. |
| 12/24/98 | Index to administrative Record and Record, filed. (in vault in bottom Certification of Record, filed.                    drawer in grey cabinet) |
| 12/28/98 | Notice of briefing schedule sent to atty and Pltf. |
| 1/28/99 | Motion to consolidate with civil action AP98-45 including memorandum in support filed.  s/Gagnebin III Pro Se Motion to extend time in civil action AP98-45 for petitioners brief including memorandum in support filed.  s/Gagnebins,Pro Se |
| 2/3/99 | Opposition to petitioners motions to consolidate and to extend time in which to file brief with incorporated memorandum of law filed. s/Meyers,Esq. |
| 2/5/99 | Letter regarding the omittal of AAG Reid filed.  s/Meyers,Esq. |
| 2/16/99 | Petitioners response to respondents opposition to petitioners motions to consolidate and extend time filed.  s/Gagnebin III Pro Se |
| 2/26/99 | Appearance filed.  s/Cunningham,Esq. |
| 3/2/99 | Hearing had on Motion to Consolidate and Motion for Extension with Justice Studstrup, presiding.  Tape #472 Edward Johnson, Esq. for the Plaintiff, Carol Blasi, Esq.(AP98-45) Gerald Reid, AAG and Jeffery Meyers, Esq. for the Defendant.. Oral arguments made to court. Court doesn't feel cases should be consolidated before Judge Atwood decides AP98-45 Court GRANTS Motion to Extend. |